UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE RICHARDS, | ECF Case #22-9095 |
| Plaintiff, | **COMPLAINT** |
| -against- | *Jury Trial Demanded* |
| THOMAS C. KALLISH, EVERYONE'S EARTH, INC., and KANE SOCKS COMPANY. | |
| Defendants. | |

Plaintiff, NICOLE RICHARDS ("Plaintiff"), by and through the undersigned attorneys, as and for her complaint, respectfully alleges and sets forth as follows:

## NATURE OF THE ACTION

This civil action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, as amended, the patent laws of the United States, 35 U.S.C. § 100 *et. seq.*, and New York common law. Plaintiff brings this action for correction of inventorship, pursuant to 35 U.S.C. § 256, of United States patent numbers 10,709,806 and 10,870,946 (collectively, the "Patents"), to remove defendant THOMAS C. KALLISH ("KALLISH") as a named inventor of such Patents because he failed to contribute to the conception of one or more of the Patents' claims, and to invalidate and void the assignment agreements, *ab initio*, purporting to transfer Plaintiff's rights in the Patents to EVERYONE'S EARTH based upon KALLISH's deceptive intent and other inequitable conduct. This action also includes a claim under 18 U.S.C. § 1836 resulting from the misappropriation of Plaintiff's valuable trade secret by KALLISH for the benefit of defendant KANE SOCKS COMPANY, as well as New York common law claims of fraud and breach of fiduciary duty.

## PARTIES

1.     Plaintiff NICOLE RICHARDS is an individual residing at 135 Wildlife Trail, Madison, North Carolina.

2.     Defendant EVERYONE'S EARTH INC. ("EVERYONE'S EARTH") is a corporation that is organized and existing under the laws of the State of Delaware, with a place of business at 48 Overlook Road, Ossining, New York.

3.     Defendant KANE SOCKS COMPANY, doing business as "KANE 11" ("KANE 11"), is a corporation which is organized and existing under the laws of the State of Delaware, with a place of business at 48 Overlook Road, Ossining, New York.

4.     On information and belief, defendant THOMAS C. KALLISH is an individual residing at 48 Overlook Road, Ossining, New York.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. This Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because such state law claims share all common operative facts with Plaintiff's federal law claims, and the parties are identical. Jurisdiction is also proper under 28 U.S.C. § 1332, as there is diversity between the parties and the amount in controversy substantially exceeds $75,000.

6.     This Court has personal jurisdiction over defendants under CPLR § 301 and/or § 302 as defendants regularly engage in the transaction of business in the State of New York, reside in the State of New York, and/or have an office in the State of New York.

7.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a) and (c).

## STATEMENT OF FACTS

8.     Plaintiff is an experienced chemist and the inventor of four utility patents that are registered with the United States Patent and Trademark Office ("USPTO").

9.     Defendant KANE SOCKS COMPANY, doing business as KANE 11, is a manufacturer and nationwide distributor of socks containing Plaintiff's trade secret sock sizing technology (the "Sock Sizing" invention).

10.     EVERYONE'S EARTH is the listed applicant and assignee of two utility patents issued by the USPTO for a biodegradable diaper product that were conceived solely by Plaintiff, including one patent filed on July 15, 2016, bearing U.S. patent number 10,709,806 (the "'806 Patent"), and the other patent filed on October 17, 2018, bearing U.S. patent number 10,870,946 (the "'946 Patent").

11.     On information and belief, KALLISH is a founding shareholder and a director and/or officer of Kane 11 and EVERYONE'S EARTH.

12.     The Patents incorrectly list KALLISH as a co-inventor, though each of the claims underlying the Patents were invented solely by Plaintiff.

*The '806 Patent*

13.     On or about May 1, 2015, KALLISH approached Plaintiff to develop an environmentally-friendly diaper product for their mutual benefit. In return for inventing a biodegradable diaper product, KALLISH promised Plaintiff that she would hold a large percentage of "founders shares" in the company that KALLISH planned to form to exploit Plaintiff's invention. Thereafter, on information and belief, KALLISH formed EVERYONE'S EARTH with the purpose of exploiting Plaintiff's eco-friendly diaper invention.

invented by Plaintiff. Such international application named Plaintiff as the sole inventor and applicant of such patent.

19.     On the morning of October 26, 2016, KALLISH directed Plaintiff to execute an assignment agreement which transferred all of Plaintiff's rights in the '806 Patent to EVERYONE'S EARTH without consideration.

20.     On October 26, 2016 at 1:01pm, after Plaintiff had not returned the executed assignment agreement to KALLISH as he had directed, KALLISH called Plaintiff to pressure her into returning the assignment, threatening that she would lose all rights to participate in the profits arising from her invention if she failed to do as he directed. Later that evening, KALLISH sent Plaintiff an email again transmitting the assignment, directing Plaintiff to "have your assignment **terrorized** (emphasis added) and scanned back to me…"

21.     On October 27, 2016, Plaintiff, who was deeply fearful following KALLISH's threats, felt she had no choice but to sign the assignment agreement he presented that transferred the rights in the '806 Patent to EVERYONE'S EARTH for no consideration.

22.     On October 28, 2016, KALLISH filed with the USPTO in connection with the application for the '806 Patent the assignment in favor of EVERYONE'S EARTH and a declaration of inventorship which falsely stated that "I, Thomas C. Kallish, have made certain inventions or discoveries (or both) as set forth in the patents and applications listed in the attached exhibit A."

23.     On July 14, 2020, the USPTO issued the '806 Patent, incorrectly naming Plaintiff and KALLISH as co-inventors, and listing EVERYONE'S EARTH as applicant and assignee.

*Whitening Agent Patent*

24.      During 2017, Plaintiff conceived of and reduced to practice an invention to work in coordination with her eco-friendly diaper invention (the "Whitening Agent invention").

25.      On October 10, 2017, after KALLISH received a draft of the patent application for Plaintiff's Whitening Agent invention which incorrectly named both Plaintiff and KALLISH as joint inventors, KALLISH stated in an email that "I would like to be the only name on the patent as they will be assigned to the company."

26.      On October 20, 2017, the patent application for the Whitening Agent invention that ultimately matured into the '946 Patent was filed with the USPTO, naming EVERYONE'S EARTH as applicant and Plaintiff and KALLISH as co-inventors, falsely identifying KALLISH as "First-named inventor." However, not only was KALLISH not a joint inventor of the '946 Patent, but Plaintiff had not assigned her rights in her invention to authorize EVERYONE'S EARTH to apply for her Whitening Agent patent as applicant.

27.      On or about October 20, 2017, KALLISH falsely attested to the USPTO, by filing a declaration of inventorship, that he "made certain inventions or discoveries (or both)" in connection with the Whitening Agent patent application that matured into the '946 Patent.

28.      On November 13, 2017, twenty-four days after KALLISH had the patent application for Plaintiff's Whitening Agent invention filed with the USPTO naming EVERYONE'S EARTH as applicant, EVERYONE'S EARTH's CEO directed Plaintiff to sign an assignment in favor of EVERYONE'S EARTH.

29.      Plaintiff felt pressured to execute the assignment of her invention given that the patent application falsely named KALLISH as co-inventor.

30.     On December 22, 2020, the USPTO issued the '946 Patent, listing EVERYONE'S EARTH as applicant and assignee, and incorrectly naming Plaintiff and KALLISH as join inventors.

*Individual Sock Sizing Technology*

31.     On or about January 15, 2018, KALLISH approached Plaintiff with the idea that she conceive of and reduce to practice an invention for manufacturing socks in individual sizes (the "Sock Sizing invention"), stating that the revenue earned from Plaintiff's Sock Sizing invention could be redistributed to EVERYONE'S EARTH to help fund the reduction to practice and marketing of Plaintiff's eco-friendly diaper invention.

32.     KALLISH's stated plan was to directly benefit Plaintiff, whom KALLISH had falsely claimed was the second largest stockholder of EVERYONE'S EARTH. For her efforts, KALLISH also promised Plaintiff a large grant of stock in KANE 11, the company KALLISH had formed to exploit Plaintiff's Sock Sizing technology.

33.     Beginning on January 23, 2018, Plaintiff made over 20 trips to several sock manufactures, engaging regularly with their employees on numerous telephone calls and emails in order to reduce to practice her Sock Sizing invention. KALLISH only accompanied Plaintiff on one of her numerous meetings (and never participated in numerous telephone calls) with the sock manufactures, only explaining the product concept and his marketing plans, but avoiding any discussion of the conception of the Sock Sizing technology and how to reduce it to practice.

34.     On or about April 23, 2018, KALLISH mentioned to Plaintiff that they should seek a patent for Plaintiff's Sock Sizing invention.

35.     While Plaintiff had developed the patent about her Sock Sizing invention without KALLISH's involvement, unbeknownst to Plaintiff, on June 1, 2018, a provisional patent

7

application (number 62,679,106) was filed with the USPTO which falsely designated KALLISH as the sole inventor of such provisional patent.

36.    Approximately one year later, on May 31, 2019, in response to a question about the accuracy of KALLISH's claimed sole inventorship of the provisional patent for the Sock Sizing technology conceived solely by Plaintiff, KALLISH directed that he and Plaintiff be listed as joint inventors on the patent application. However, minutes later, KALLISH changed his mind, stating that only he should be listed as an inventor of the Sock Sizing invention conceived solely by Plaintiff.

37.    On November 18, 2020, KALLISH advised Plaintiff that the patent application for the Sock Sizing invention had been denied, and directed her to draft an explanation about the differences between prior sock sizing technology and Plaintiff's unique invention in order to continue to prosecute Plaintiff's patent.

38.    On June 9, 2021, KALLISH filed with the USPTO new independent claims regarding the Sock Sizing invention that Plaintiff had provided to him.

39.    On or after December 5, 2021, unbeknownst to Plaintiff, KALLISH abandoned the patent application for the Sock Sizing invention, and as a result, Plaintiff forever lost the right to prosecute the patent.

### Inducement of Plaintiff to Assign Patents

40.    While KALLISH had no role in conceiving of, nor even reducing to practice, any of the claims comprising the Patents and the Sock Sizing technology, KALLISH claimed himself to be an inventor on the patent applications, on information and belief, for the purpose of controlling the rights to file applications with the USPTO and to own such intellectual property.

8

41.     While Plaintiff had placed her trust in KALLISH to protect her inventions and to assist her in capitalizing upon them, instead, KALLISH falsely represented to the USPTO that he was an "inventor" of her technologies and patents, repeatedly stating to Plaintiff that Plaintiff's technologies were his ideas and that he was "going on that patent."

42.     KALLISH's representations to the USPTO were knowingly false and made with the intent to deceive.

43.     KALLISH's false designation as an inventor on her patent applications caused Plaintiff to be dependent on KALLISH and his entities to realize any profits from her inventions. KALLISH's threatening behavior, in combination with his official status on her patents, caused Plaintiff to believe that she had no option but to execute the assignments that KALLISH directed that she sign.

44.     While KALLISH had repeatedly promised Plaintiff substantial stock grants in the companies that KALLISH founded in order to exploit her inventions, EVERYONE'S EARTH and KANE 11, Plaintiff never received any grant of stock in such companies.

45.     Eventually, on June 7, 2016, more than eleven months after Plaintiff was induced by KALLISH to assign her rights in the '806 Patent to EVERYONE'S EARTH, instead of receiving the promised "founder's shares," she received an option to purchase a total of 600,000 shares in EVERYONE'S EARTH for a purchase price of $60,000. Several years later, on February 16, 2021, Plaintiff received another option to purchase 400,000 shares for a purchase price of $40,000.

46.     Plaintiff did not understand, nor did KALLISH ever explain, that he had provided her with a mere option to purchase stock, as opposed to the promised grant of a substantial percentage of stock of EVERYONE'S EARTH, which was the assignee of all of Plaintiff's rights

in her inventions without payment to Plaintiff of any consideration. In addition, such option was "contingent upon [Plaintiff's] continued services for the Company" – though Plaintiff was not an employee or independent contractor of EVERYONE'S EARTH, nor has she ever been compensated by EVERYONE'S EARTH.

47.     On or about February 2, 2022, after Plaintiff's legal counsel explained the meaning of the option, Plaintiff sent KALLISH a notice of exercise to subscribe for 200 shares of EVERYONE'S EARTH stock and 200 shares of KANE 11 stock. In response, on February 4, 2022, KALLISH sent an email to Plaintiff in which he refused to exercise the options unless she exercised the entire allotment (requiring her to pay over $100,000), falsely claiming that Plaintiff "can't partially exercise the agreement" – despite that the option agreement clearly permitted that "[t]he option to purchase stock may be exercised…in whole or in part.."

48.     On March 1, 2022, after KALLISH had learned that Plaintiff was disputing his claims of inventorship of her patents, as he had repeatedly done in the past, he threatened that she would force him "to go to war" with her, and thereafter ceased all communications with Plaintiff.

## FIRST CAUSE OF ACTION
### Declaratory Judgment to Correct Inventorship

49.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 48 as though fully set forth therein.

50.     Pursuant to 35 U.S.C. §256, Plaintiff is entitled to an Order requiring correction of the designated inventorship on the Patents and an Order directed to the U.S. Commissioner of Patents (the Director of the U.S. Patent and Trademark Office) requiring issuance of a Certificate of Correction.

51.     Plaintiff is and believes herself to be the first, true, and original inventor of the inventions claimed in the Patents. She solely conceived of the inventions and had a definite and

permanent conception of the complete and operative inventions claimed in the Patents, as they were thereafter applied in practice, prior to the completion of the applications that matured into the Patents.

52.     Plaintiff had a specific, settled method for development of the inventions that she conceived and that resulted in the '806 Patent, the '946 Patent, and the Sock Sizing technology, not just a general goal or research plan that she had hoped to pursue. Plaintiff privately communicated her inventions to defendants in order to file the patent applications on her behalf.

53.     KALLISH did not conceive of, nor contribute to, any of the claims underlying the Patents and the patent application for the Sock Sizing technology.

54.     Through KALLISH's intentional fraud upon the United States Patent and Trademark Office, KALLISH is incorrectly named as a co-inventor on the Patents.

## SECOND CAUSE OF ACTION
### Declaratory Judgment of Inequitable Conduct to Void Assignments

55.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 54 as though fully set forth therein.

56.     KALLISH is, through intentional fraud, incorrectly joined as an inventor of the '806 Patent and the '946 Patent.

57.     Plaintiff has been and continues to be harmed by KALLISH's false designation as inventor in the applications for the Patents, which KALLISH executed under oath and filed with the United States Patent and Trademark Office.

58.     KALLISH caused the application which matured into the Patents to be filed with full knowledge that the inventions underlying the Patents were not created with any participation by him, as required to be designated an inventor on the Patents.

59.     KALLISH was aware that he made no inventive contributions to the inventions on which the Patents were based, but intentionally misrepresented his contributions in the applications to the United States Patent and Trademark Office that matured into the Patents in order, on information and belief, to take an initial ownership stake in the Patents and induce Plaintiff into assigning her rights in the Patents to EVERYONE'S EARTH.

60.     The assignments that KALLISH provided to Plaintiff for signature were executed by Plaintiff in reliance on KALLISH's misrepresentation claiming inventorship. Accordingly, Plaintiff is entitled to an Order declaring the assignments void as a result of defendants' inequitable conduct and fraud upon the United States Patent and Trademark Office during prosecution of the Patents and due to the issuance of the Patents in violation of 35 U.S.C. § 101.

### THIRD CAUSE OF ACTION
### Common Law Fraudulent Inducement

61.     Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 60 as though fully set forth therein.

62.     During the relevant time, KALLISH, individually and on behalf of EVERYONE'S EARTH and KANE 11, made false representations and misrepresentations of material fact regarding his designation as inventor of the '806 Patent, the '946 Patent and on the patent application for the Sock Sizing invention.

63.     The misrepresentation made by KALLISH about his designation as an inventor of Plaintiff's intellectual property was untrue and known to be untrue by defendants, but was made for the purposes of inducing Plaintiff's reliance thereon, to cause her execution of assignments in favor of EVERYONE'S EARTH, which agreements purported to assign all of Plaintiff's right, title and interest in the Patents to EVERYONE'S EARTH without any consideration.

12

64.     Plaintiff, unaware of the falsity of the representations, reasonably and justifiably relied on KALLISH's misrepresentations to her detriment.

65.     At all relevant times, KALLISH acted as an agent of EVERYONE'S EARTH and KANE 11, which are vicariously liable for his actions.

66.     As a direct and proximate result of KALLISH'S fraudulent misrepresentations, Plaintiff has been materially damaged.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty

67.     Plaintiff incorporates by reference paragraphs 1 through 66.

68.     As a promised co-founder of the companies that were formed for the purpose of exploiting Plaintiff's intellectual property, KALLISH owed and continues to owe the duties of care, loyalty and good faith to Plaintiff.

69.     KALLISH knowingly breached his fiduciary duties to Plaintiff.

70.     KALLISH failed to act in a manner consistent with his obligations in accordance with his promises, agency and trust to Plaintiff, and failed to exercise good faith and loyalty to Plaintiff in exploiting her intellectual property.

71.     Among other acts and omissions, KALLISH misappropriated and converted Plaintiff's patents and trade secrets and failed to make her a stockholder of KANE 11 and a co-founder of EVERYONE'S EARTH, which were formed by KALLISH to exploit Plaintiff's intellectual property, thereby irreparably harming Plaintiff.

72.     As a direct and proximate result of KALLISH's breaches of his fiduciary duty to Plaintiff, Plaintiff has been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Theft of Trade Secrets**

73.    Plaintiff incorporates by reference paragraphs 1 through 72.

74.    Plaintiff is the owner of the Sock Sizing trade secret.

75.    Plaintiff's Sock Sizing trade secret was created for the purpose of manufacturing socks that are sold, used or intended for use in interstate commerce. KANE 11 sold the socks created with the Sock Sizing trade secret technology throughout the United States.

76.    Defendants KALLISH and KANE 11 have stolen, fraudulently used, possessed, and/or misappropriated Plaintiff's trade secrets by knowingly acquiring such trade secrets for use and sale by KANE 11 without a license, assignment or other permission granted by Plaintiff for such use.

77.    18 U.S.C. § 1836 provides a plaintiff with civil remedies against any individuals who have misappropriated a trade secret, such damages including damages for the actual loss of the trade secret, damages for any unjust enrichment caused by the misappropriation of the trade secret, and if willfully and maliciously misappropriated, the Court shall award two times the amount of the damages awarded to a plaintiff.

78.    Defendants KALLISH and KANE 11 acted maliciously in misappropriating Plaintiff's trade secret that was used in interstate commerce.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against defendants as follows:

A. U.S. Patent No. 9,758,692 be corrected to state that Plaintiff is the sole inventor;

B. U.S. Patent No. 11,098,444 be corrected to state that Plaintiff is the sole inventor;

C. Declare that Plaintiff possesses legal or equitable ownership or another interest in the Patents inconsistent with or superior to any interest asserted by defendants;

14

D.  An accounting and paying over to Plaintiffs of all sums by which defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial by their wrongful conduct, have unjustly enriched themselves, including, but not limited to, all revenue generated by the Patents and Sock Sizing technology;

E.  An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, reputational harm and harm to professional reputation, in an amount to be determined at trial;

F.  An award of punitive damages and any applicable penalties and/or liquidated damages, in an amount to be determined at trial;

G.  Prejudgment interest on all amounts due;

H.  An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all issues to be tried.


Dated: White Plains, New York
October 25, 2022

By:   /S/ Michael G. Santangelo
           **Attorney for Plaintiff**
           Law Offices of Michael G. Santangelo PLLC
           75 S. Broadway, 4th Fl.
           White Plains, NY 10601
           Tel: (914) 304-4242
           Email: mgsesq@msn.com

By: __/S/ Claudia Pollak_____

**Attorney for Plaintiff**
75 S. Broadway, 4th Fl.
White Plains, NY 10601
Tel.: 914-529-9111
Email: claudia@claudiapollaklaw.com

I hereby attest that I have on file a holographic signature
corresponding to my signature indicated by a confirmed
signature (/s/) within this e-filed document.

16