UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Nicole Richards,

                     Plaintiff,

        -against-

Thomas C. Kallish, et al.,

                    Defendants.
-----------------------------------------------------------------X

22-cv-9095 (CS) (VR)

**<u>OPINION AND ORDER</u>**

**VICTORIA REZNIK, United States Magistrate Judge:**

     The parties dispute whether Defendants can assert attorney-client privilege over their communications with patent counsel, which Plaintiff seeks in response to her Request for Admissions and Request for Production of Documents. (ECF Nos. 50, 53, 69, 71, 78). To resolve the dispute, the Court ordered formal briefing to decide the applicability and scope of the attorney-client privilege as it relates to patent counsel, and whether and to what extent broader discovery of patent counsel is warranted. (ECF No. 79 at 4).[1]

     Plaintiff first argues that she has a right to discover all patent-related attorney-client communications because she had an implied attorney-client relationship with patent counsel, which made her a joint client with Defendant Everyone's Earth. (ECF No. 92 at 8–13). Plaintiff next argues that Defendants waived attorney-client privilege by disclosing patent-related communications to her and others (*id.* at 13–17); by placing the attorney-client relationship directly at issue (*id.* at 8); and by selectively disclosing some communications about the patents but not others (*id.* at 7–8). Finally, Plaintiff argues that Defendants' communications with patent

---

[1] By separate orders, the Court addressed the parties' other discovery disputes in ECF Nos. 50, 53, 69, 71, and 78.

counsel are not privileged because the crime-fraud exception applies.  (*Id.* at 17–23).[2]

In response, Defendants argue that the privilege belongs solely to Everyone's Earth as the client of patent counsel (ECF No. 88 at 4–6), with whom Plaintiff did not have an implied attorney-client relationship.  (ECF No. 93 at 6–8).  Defendants also dispute Plaintiff's various waiver arguments by asserting that: (1) Plaintiff's presence on communications with patent counsel did not waive privilege because Plaintiff was acting as agent of Everyone's Earth (ECF No. 88 at 6–8); (2) the presence of patent counsel's paralegals and administrators and Everyone's Earth's employees, agents, and consultants did not waive privilege (*id.* at 8–9; ECF No. 93 at 8); and (3) Defendants did not place the attorney-client relationship at issue or selectively disclose some communications but not others (ECF No. 93 at 5).  Finally, Defendants argue that Plaintiff did not satisfy her burden of establishing the crime-fraud exception.  (*Id.* at 8–9).

For the reasons explained below, Defendants' Motion for a Protective Order is **GRANTED** in part and **DENIED** in part.

## DISCUSSION

### I.      Elements of the Attorney-Client Privilege

Under federal common law,[3] "the attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Krug*,

---

[2] Plaintiff also argues that Defendants waived privilege by failing to adequately describe the communications on their initial and revised privilege logs.  (ECF No. 92 at 23).  The Court declines to revisit this argument, which was addressed in prior orders that resolved the parties' disputes over Defendants' privilege log.

[3] Where, as here, subject matter jurisdiction is grounded on a federal question, privilege issues are governed by federal common law.  *See* Fed. R. Evid. 501.  Because this action also implicates issues of patent law, the Court applies Federal Circuit precedent, where available.  *See In re Queen's Univ.*, 820 F.3d 1287, 1290 (Fed. Cir. 2016) ("We will apply our own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right.") (alteration omitted).

2

868 F.3d 82, 86 (2d Cir. 2017) (alteration omitted); *accord In re Spalding Sports Worldwide*, 203
F.3d 800, 805 (Fed. Cir. 2000).

"The underlying purpose of the attorney-client privilege is 'to encourage full and frank
communication between attorneys and their clients.'" *Krug*, 868 F.3d at 86 (quoting *Upjohn Co.
v. United States*, 449 U.S. 383, 389 (1981)). "As a result, the attorney-client privilege creates a
rule of confidentiality that 'recognizes that sound legal advice or advocacy serves public ends
and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'"
*Id.* (quoting *Upjohn*, 449 U.S. at 389). "In order to balance this protection of confidentiality with
the competing value of public disclosure, however, courts apply the privilege only where
necessary to achieve its purpose and construe the privilege narrowly because it renders relevant
information undiscoverable." *Id.* The party claiming the privilege has the burden of establishing
the essential elements of the privilege. *Id.*

## II.    Whether The Privilege Belongs Solely to Everyone's Earth or is Shared with Plaintiff as a Joint Client

To begin with, Defendants have facially established the essential elements of the
attorney-client privilege regarding their communications with patent counsel. Defendants submit
engagement letters that establish that Everyone's Earth, and its predecessor, Tommie for
Mommie, had an attorney-client relationship with patent counsel. (*See* ECF Nos. 88-1, 88-5, 77-
7, 88-8, 88-9). Because the communications with patent counsel were to prosecute a patent
application, they are subject to the attorney-client privilege. *See In re Spalding Sports
Worldwide*, 203 F.3d at 805–06 ("[A]n invention record constitutes a privileged communication,
as long as it is provided to an attorney for the purpose of securing primarily legal opinion, or
legal services, or assistance in a legal proceeding.") (internal quotation marks omitted); *see also*

*Sperry v. Florida*, 373 U.S. 379, 383 (1963) ("[T]he preparation and prosecution of patent applications for others constitutes the practice of law.").

The disputed question, however, is whether that privilege belongs solely to Everyone's Earth (as Defendants claim) or is shared with Plaintiff as a joint client.  According to Plaintiff, Mr. Kallish arranged to promote and organize a new company (Everyone's Earth) for their mutual benefit to develop and patent Plaintiff's invention of a biodegradable diaper.  (ECF No. 92 at 2).  To that end, Plaintiff says that she worked with patent counsel to prosecute the patents at issue, including assignment of her rights in the patents to Everyone's Earth.  (*Id.*).  As a result, Plaintiff contends that she had an implied attorney-client relationship with patent counsel, so that she and Everyone's Earth were joint clients.[4]  (*Id.* at 8–13).  If Plaintiff is correct, then she would be entitled to discover all communications Defendants had with patent counsel, including those communications to which Plaintiff was not directly privy.  *See First Metlife Invs. Ins. Co. v. Zilkha*, No. 08-cv-10113, 2009 WL 2999607, at *3 n.6 (S.D.N.Y. Sept. 21, 2009) ("The attorney-client privilege does not shield attorney-client communications from disclosure in the

---

[4] Notably, Plaintiff provides no evidence that she had an express attorney-client relationship with patent counsel. For example, she provides no evidence of an engagement letter between herself and patent counsel or evidence that she compensated patent counsel for legal services.  Only Defendants offer such evidence.  (*See* ECF Nos. 88-1, 88-5, 88-7, 88-8, 88-9).

4

context of litigation between the two joint clients.").[5]  Yet for the reasons explained below, the

Court finds that Plaintiff did not have an attorney-client relationship, express or implied, with

patent counsel.  Plaintiff was therefore not a joint client of patent counsel and the attorney-client

privilege with them belongs solely to Everyone's Earth.

    "The formation of an attorney-client relationship hinges upon the client's reasonable

belief that he is consulting an attorney in that capacity and his manifested intention to seek

professional legal advice."  *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 61 (S.D.N.Y.

2017) (alteration omitted).[6]  "No special formality is required to demonstrate the establishment

of that relationship."  *Id.* at 62.  Courts in this District have generally considered six factors in

assessing whether an attorney-client relationship existed: (1) whether a fee arrangement was

entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating

that the attorney accepted representation; (3) whether there was an informal relationship in which

the attorney performed legal services gratuitously; (4) whether the attorney actually represented

the client in one aspect of the matter (*e.g.*, a deposition); (5) whether the attorney excluded the

---

[5] *See also Brennan's Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 173 (5th Cir. 1979) ("If the representation was joint, however, defendants possess no information as to which plaintiff could have had any expectation of privacy in relation to the defendants."); *Mackenzie-Childs LLC v. Mackenzie Childs*, 262 F.R.D. 241, 249 (W.D.N.Y. 2009) ("An exception to the rule that waiver of the privilege may not be effected absent the consent of both parties to the common interest arises where the parties subsequently become adverse to each other in litigation.  Under these circumstances, neither may assert the privilege against the other.") (citation omitted); *Bass Pub. Ltd. v. Promus Cos.*, 868 F. Supp. 615, 620 (S.D.N.Y. 1994) ("Where there is a joint attorney-client privilege, there is no expectation that confidential information will be withheld from joint clients as there is no privilege between them."); 30 JAMES M. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 808.05 (Mathew Bender ed., 3d ed. 2023) ("Courts presume, however, that there are no confidences or secrets between joint clients regarding matters related to the joint representation.  Consequently, if joint parties subsequently enter into litigation with one another, neither party may exercise the attorney-client privilege to preclude testimony on an issue that they shared before the litigation.  This joint client exception to the attorney-client privilege ensures equal access to the information necessary to equitably resolve disputes between former joint parties concerning matters that were involved in the initial joint representation.").

[6] *Accord Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 210 (S.D.N.Y. 2009); *Diversified Grp., Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 454 (S.D.N.Y. 2001) (citing *United States v. Evans*, 113 F.3d 1457, 1465 (7th Cir 1997)).

individual from some aspect of the representation to protect another client's interest; and

(6) whether the purported client believes that the attorney was representing him and whether this

belief was reasonable.  *Id.*; *see also Rand v. Birbrower*, 31 F. App'x 748, 751 (2d Cir. 2002)

(Summary Order) (applying some of the above factors).[7]

These factors on balance weigh against finding that Plaintiff had an implied attorney-

client relationship with patent counsel.  To begin with, the first and second factors (fee

arrangements or retainer agreements) weigh against finding an implied attorney-client

relationship.  There is no evidence that Plaintiff entered a fee arrangement, paid a fee to, or had a

contract or retainer agreement with patent counsel.  Indeed, only Everyone's Earth and Tommie

for Mommie show evidence of such a fee arrangement and retainer agreement with patent

counsel.  (ECF Nos. 88-1, 88-5, 77-7, 88-8, 88-9).  Plaintiff argues that her lack of engagement

letters and fee payments by themselves do not disprove the existence of an attorney-client

relationship.  (ECF No. 92 at 13).  This may be true but, as discussed below, none of the

remaining factors support an implied attorney-client relationship either.

The third factor (whether there was an informal relationship in which the attorney

performed legal services gratuitously) also weighs against finding an implied attorney-client

relationship.  There is no evidence that patent counsel performed any legal services gratuitously

for Plaintiff.  Plaintiff argues that she "submitted confidential information about her inventions to

the patent attorneys in connection with the patenting of her inventions, including engaging in

hundreds of communications with patent counsel regarding both the prosecution of the [p]atents

---

[7] *Accord Merck Eprova AG*, 670 F. Supp. 2d at 210 (identifying the six factors); *Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 307 (S.D.N.Y. 2008) (same); *Catizone v. Wolff*, 71 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (same); *First Hawaiian Bank v. Russell & Volkening*, 861 F. Supp. 233, 238 (S.D.N.Y. 1994) (same).

as well as unrelated patents, signing several [p]owers of [a]ttorney in favor of the patent

attorneys, and being personally represented, in her capacity as the inventor of the [p]atents in two

USPTO examiner meetings without Defendants' involvement."  (ECF No. 92 at 9).  But none of

these activities establish that patent counsel had an informal relationship with Plaintiff by which

they performed legal services gratuitously for her.  Rather, based on the retention agreement

between patent counsel and Everyone's Earth, these activities were performed to further patent

counsel's provision of legal services to *Everyone's Earth*.  The Federal Circuit has explained that

when an inventor assigns her interest in a patent to an entity and the patent counsel prosecutes

the patent application in the name of the inventor, under 35 U.S.C. § 111,[8] the inventor and

patent counsel do not automatically develop an attorney-client relationship.  *Univ. of W. Va. v.*

*VanVoorhies*, 278 F.3d 1288, 1303–04 (Fed. Cir. 2002).  While the inventor might provide

technical information and execute necessary documents for prosecution of the patent application,

those acts do not establish an attorney-client relationship.  *Id.*  This is because 35 U.S.C. § 111

requires that the inventor apply for the patent, even when the invention has been assigned to a

company.  *See Sun Studs, Inc. v. Applied Theory Assocs.*, 772 F.2d 1557, 1568 (Fed. Cir. 1985)

(finding that when inventor assigns invention to company, the inventor "is required to execute

whatever papers are necessary for the company's patent counsel to prosecute a patent application

on behalf of the company").  Thus, "[w]here the former relationship between the inventor and

the patent counsel was solely technical in nature, and where the patent counsel in the former

relationship was chosen by and at all times was working on behalf of the company rather than

the inventor," the inventor has no attorney-client relationship with patent counsel.  *Id.* at 1568–

---

[8] 35 U.S.C. § 111(a)(1) provides that "[a]n application for patent shall be made, or authorized to be made, by the inventor . . . ."

69.  Here, patent counsel was hired and retained by Everyone's Earth.  (*See* ECF Nos. 88-5, 88-8).  Plaintiff then communicated with patent counsel, executed powers of attorney, and attended USPTO examiner meetings with patent counsel.  All these activities appear consistent with Plaintiff's obligation, as inventor, to provide patent counsel with technical information and to execute necessary documents to prosecute the patents for the benefit of Everyone's Earth.  These activities thus do not demonstrate that Plaintiff had an informal relationship with patent counsel by which patent counsel performed gratuitous legal services for Plaintiff.

Similarly, the fourth factor (whether the attorneys represented Plaintiff in one aspect of the matter) weighs against finding an implied attorney-client relationship.  While Plaintiff contends that patent counsel "personally represented" her in her capacity as the inventor at two USPTO examiner meetings without Defendants involvement (ECF No. 92 at 9), there is no evidence that this representation was personal to Plaintiff.  Rather, such activities furthered patent counsel's representation of Everyone's Earth to whom Plaintiff assigned the patents.  Indeed, patent counsel's involvement with Plaintiff at USPTO examiner meetings makes sense given Plaintiff's obligation as inventor to provide the necessary technical information and documents to enable patent counsel to prosecute the patents at issue.  *Sun Studs, Inc.*, 772 F.2d at 1568.

The fifth factor (whether the attorneys excluded Plaintiff from some communications to protect another client's interest) also weighs against finding an implied attorney-client relationship.  Defendants excluded Plaintiff from several communications between patent counsel and representatives of Everyone's Earth, including billing and other business matters.  (ECF No. 88 at 5–6).  In fact, Plaintiff now seeks production of some of those communications in discovery.  (*See* ECF No. 92 at 1–2).

8

In addition, the final factor (that the client believes that the attorney was representing her and whether that belief was reasonable) weighs against finding an implied attorney-client relationship.  This factor arguably carries more weight than the previous factors.  *See First NBC Bank*, 259 F. Supp. 3d at 64 ("The operative test, however, does not turn on the lawyer's state of mind or good faith or intentions.  It is focused on the reasonableness of the *client's* belief that there was an attorney-client relationship, including based on the services performed.").  Plaintiff argues that she reasonably believed that she had an attorney-client relationship with patent counsel.  (ECF No. 92 at 9–11).  In support, Plaintiff offers a declaration, which states that she "believed the patent counsel were acting as [her] counsel in [her] capacity as inventor of the [p]atents." (ECF No. 92-1 at 1).  The Court does not question whether Plaintiff had such a belief.  But "a person's subjective belief that an attorney-client relationship exists, alone, is typically insufficient to show that such a relationship exists."  *Kleeberg v. Eber*, No. 16-cv-9517, 2019 WL 2085412, at *15 (S.D.N.Y. May 13, 2019); *Kubin v. Miller*, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992).  Instead, Plaintiff must also establish that her "belief was reasonable." *First NBC Bank*, 259 F. Supp. 3d at 62.

Here, the Court is not persuaded that Plaintiff's belief was reasonable, given the circumstances of her purported business arrangement with Mr. Kallish, her assignment of the patents to Everyone's Earth, and her lack of any separate retention agreement with patent counsel.  In her declaration, Plaintiff explains that Mr. Kallish had proposed to her that she develop a disposable, biodegradable diaper and that they "would be stockholders of a corporation that Kallish would incorporate in order to exploit the proposed eco-friendly diaper." (ECF No. 92-1 at 1).  To support this purported business arrangement, Plaintiff explains that she worked with patent counsel to draft, file, and prosecute the patents, and ultimately assigned her rights in

9

the patents to Everyone's Earth.  (*See id.*).  If Plaintiff believed she was promised shares in Everyone's Earth in exchange for her work on the diaper and patents, it was not reasonable for her to believe that patent counsel represented her individually.  Rather, Plaintiff should have known that her work on the diaper was for the benefit of Everyone's Earth (to which she believed she would have a beneficial interest) and that patent counsel was prosecuting the patents for Everyone's Earth, and not Plaintiff.  This is particularly true given Plaintiff's assignment of the patents to Everyone's Earth and her lack of any separate retainer agreement or fee arrangement with patent counsel.[9]

Accordingly, each of the six factors weigh against finding that Plaintiff had an implied attorney-client relationship with patent counsel.  As a result, Plaintiff may not discover all communications between Defendants and patent counsel to which Plaintiff was not directly privy.[10]

## III.   Whether Defendants Waived the Attorney-Client Privilege

Having determined that Plaintiff did not have an attorney-client relationship, express or implied, with patent counsel and that this privilege belongs solely to Everyone's Earth, the Court next turns to the waiver issue.  Plaintiff argues that Defendants waived privilege (1) by disclosing communications to Plaintiff, third parties, and lower-level employees of Everyone's

---

[9] Plaintiff asserts that patent counsel failed to inform her that they did not represent her individually, in violation of several rules of professional conduct and responsibility, which lends credence to Plaintiff's assertion that she reasonably believed that patent counsel was representing her.  (ECF No. 92 at 9–10). The Court does not question whether Plaintiff believed that patent counsel represented her.  The Court only questions whether the belief was reasonable.  That patent counsel might have violated rules of professional conduct and responsibility by failing to inform Plaintiff that they did not represent her personally does not establish that Plaintiff's belief in the existence of an attorney-client relationship was reasonable. The reasonableness of Plaintiff's belief must be squared with her apparent understanding that her work would be for the benefit of Everyone's Earth in exchange for founding shares in the company.

[10] The Court separately analyzes whether Plaintiff may use the privileged communications that directly involved her, in Section IV.

Earth (*id.* at 13–17); (2) by placing the attorney-client relationship directly at issue (*id.* at 8); and (3) by selectively disclosing some privileged communications but not others (*id.* at 7–8). In response, Defendants argue that Plaintiff's presence on certain communications with patent counsel did not waive privilege because Plaintiff was acting as Everyone's Earth's agent (ECF No. 88 at 6–8); that the presence of patent counsel's paralegals and administrators and Everyone's Earth's employees, agents, and consultants did not waive privilege (*id.* at 8–9; ECF No. 93 at 8); and that Defendants did not place the attorney-client relationship at issue (ECF No. 93 at 5). The Court addresses each of these issues below.

A.  Everyone's Earth did not waive privilege by disclosing communications to Plaintiff.

Plaintiff argues that if she is not found to be a joint client with Everyone's Earth, then her communications with patent counsel waived the privilege held by Everyone's Earth. (ECF No. 92 at 5). The Court disagrees. For the reasons explained below, the Court finds that Plaintiff served as an agent to Everyone's Earth when she communicated with patent counsel regarding the prosecution of the patents. As a result, Plaintiff's communications with patent counsel did not waive the attorney-client privilege between Everyone's Earth and their patent counsel.

The attorney-client privilege attaches to corporate entities. *CFTC v. Weintraub*, 471 U.S. 343, 348 (1985). Yet the application of the attorney-client privilege to a corporation "presents special problems." *Id.*[11] "As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. . . . [T]hese actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation." *Id.* "A communication between an attorney and the agent or employee of a corporation may be

---

[11] *Accord United States v. Int'l Brotherhood of Teamsters*, 119 F.3d 210, 214–15 (2d Cir. 1997).

privileged where the agent possessed the information needed by the corporation's attorneys in order to render informed legal advice." *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 491 (S.D.N.Y. 2019) (internal quotation marks omitted); *see Upjohn*, 449 U.S. at 391.

The parties disagree as to the nature of Plaintiff's relationship with Everyone's Earth. Defendants argue that Plaintiff was acting as Everyone's Earth's agent when she was present on certain communications with patent counsel.  (ECF No. 88 at 6–8).  Plaintiff argues that she "was never a paid or *de facto* employee of Everyone's Earth, nor its consultant or independent contractor, nor had she entered into an agency relationship with Defendants (who lack any written agreement by Plaintiff to act as Everyone's Earth's agent)."  (ECF No. 92 at 3).

The Court lacks sufficient information and supporting evidence to determine whether Plaintiff was an employee, consultant, or contractor to Everyone's Earth.  But the Court need not decide Plaintiff's formal role or relationship with Everyone's Earth to determine that Plaintiff acted as Everyone's Earth's agent when communicating with patent counsel regarding the patents.  As a corporate entity, Everyone's Earth required individuals to act and speak on its behalf when communicating with patent counsel, *Weintraub*, 471 U.S. at 348, and required assistance from individuals who possessed information that patent counsel needed to prosecute the patents.  Those individuals included Plaintiff, who not only possessed the technical information needed to prosecute the patents but was required to do so due to her assignment of the patents to Everyone's Earth.  *See VanVoorhies*, 278 F.3d at 1303–04.  Plaintiff therefore "possess[ed] the information needed" by patent counsel to render legal services for Everyone's Earth, making her akin to Everyone's Earth's agent when communicating with patent counsel. *Upjohn*, 449 U.S. at 391.

12

Plaintiff argues that "Defendants . . . lack any written agreement by Plaintiff to act as Everyone's earth's agent." (ECF No. 92 at 3). But the formation of a principal-agent relationship does not require a formal or written agreement. Instead, an express or implied agency may be created "by written or spoken words" or other conduct of the principal which, reasonably interpreted, causes the agent or third party to believe that the principal desires him to act on the principal's behalf. *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 702–03 (2d Cir. 1990) (quoting Restatement (Second) of Agency §§ 26–27 (1958)).[12] Thus, Plaintiff's status as agent does not hinge on the existence of a formal or written agreement with Everyone's Earth.

As an agent of Everyone's Earth, Plaintiff's communications with patent counsel did not waive the privilege. When a corporate entity communicates through agents with counsel, the resulting attorney-client privilege belongs to the corporate entity, not to the agent. *In re Grand Jury Procs.*, 219 F.3d 175, 185 (2d Cir. 2000) ("[W]e have held that the privilege belongs to the corporation, not to the agent.").[13] Likewise, when a principal's agent is included in a communication, the agent's knowledge of the communication does not destroy the privilege because the agent is acting on the principal's behalf. *See Upjohn*, 449 U.S. at 391. Accordingly, Everyone's Earth was the privilege-holder and their inclusion of Plaintiff, as an agent, on communications with patent counsel did not waive the attorney-client privilege.

---

[12] *See also* Restatement (Third) of Agency § 3.01 cmt. b (2006) ("Actual authority may exist although there is no contract between a principal and agent; a relationship of agency does not require that the principal or the agent receive consideration from the other."); *id.* at § 3.03 ("Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.").

[13] *Accord Teamsters*, 119 F.3d at 215.

B.  <u>Everyone's Earth did not waive attorney-client privilege through the presence of individuals other than Plaintiff.</u>

Plaintiff also argues that Defendants waived attorney-client privilege by disclosing communications to "third parties and lower-level employees."  (ECF No. 92 at 13–17).  These individuals include patent counsel's paralegals and administrators; Everyone's Earth's employees, agents, and consultants; and Mr. Kallish's administrative assistants, who were either employed by Mr. Kallish or another entity.  (ECF Nos. 88 at 8–9; 93 at 8).  Generally, the presence of a third party, or the voluntary disclosure of privileged communications to a third party, destroys the privilege because the third-party's knowledge of the communication undermines the notion that "the communication was intended to be, and actually was, kept confidential."  *United States v. Mejia*, 655 F.3d 126, 134 (2d Cir. 2011).  Yet the presence of a third party, who serves as an agent of either the attorney or the client, does not destroy attorney-client privilege if the agent's presence is necessary to facilitate the communications between the attorney and client.  *See Krug*, 868 F.3d at 87.[14]

Here, the presence of patent counsel's paralegals and administrators and Everyone's Earth employees and agents on communications with patent counsel did not destroy the attorney-client privilege.  That patent counsel relies on paralegals and administrators to assist them with client work is beyond commonplace.  *See United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (noting the indispensability of legal assistants and similar aides who act as attorney's agents when working with clients).  Because help from these agents is indispensable to a

---

[14] *See also United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("[I]n contrast to the Tudor times when the privilege was first recognized, the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts.  The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.") (citations and internal quotation marks omitted).

lawyer's work and the communications of the client are often committed to them by the attorney or by the client himself, the privilege must include all persons who act as the attorney's agents. *Id.*; *see also Upjohn*, 449 U.S. at 391.  For the same reason, communications among patent counsel and employees and agents of Everyone's Earth and Tommie for Mommie, including Mr. Kallish and Chris Leyes (the COO of Everyone's Earth at that time) (ECF No. 88 at 9), did not destroy the attorney-client privilege.

Defendants also state that two individuals, Daklea Karadaku and Michelle Flaherty, were not directly employed by Everyone's Earth or Tommie for Mommie but served as Mr. Kallish's assistant and as a contractor consultant.  (ECF No. 88 at 9 n.6).  The Court need not address whether their presence waived attorney-client privilege because Plaintiff was included on all communications with these two individuals.  (*Id.*).  As explained below in Section IV, only for this litigation, Defendants may not invoke the attorney-client privilege to prohibit Plaintiff from relying on and using such privileged communications that were previously shared with her as an agent of Everyone's Earth.

The Court also notes that Defendants earlier withheld communications that involved third parties that were not involved with Everyone's Earth or Tommie for Mommie, including Karen Chen, Lawrence Wang, Bill McCabe, William Detwiler, Len Kinsman, and Toniann Santana. (ECF No. 88 at 9, 9 n.7).  Defendants state, however, that they have now removed these communications from their privilege log.  (*Id.*).  Accordingly, Defendants no longer assert that these communications are privileged, and the Court declines to address them.

C.  Plaintiff has failed to establish an at-issue waiver.

Attorney-client privilege may be waived by implication when a client testifies about portions of the attorney-client communication, "when a client places the attorney-client

relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (alterations omitted).[15]  "The fundamental proposition governing implied or 'at issue' waivers of attorney-client and other evidentiary privileges is that a party may not affirmatively rely on privileged communications to support a claim or defense and then shield those communications from discovery by its adversary." *United States v. Ghailani*, 751 F. Supp. 2d 498, 501 (S.D.N.Y. 2010); *see In re Grand Jury Procs.*, 219 F.3d at 182 ("[F]airness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'").[16]  Whether a party has impliedly waived attorney-client privilege raises questions of fairness and must be addressed "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Erie*, 546 F.3d at 229.[17]  "[S]imply because privileged information is relevant to a claim or defense in the case does not give rise to an implied waiver; rather, to forfeit privilege, the party must *rely* on privileged advice from counsel to make his claim or defense." *Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd.*, No. 07-cv-7983, 2016 WL 3042733, at *5 (S.D.N.Y. May 24, 2016) (internal quotation marks omitted); *see Erie*, 546 F.3d at 229.  Thus, the Court "will not find an at issue waiver merely because privileged information is relevant to the issues being litigated." *Nimkoff*, 2016 WL 3042733, at *5.  Rather, an at-issue waiver occurs when the party asserts a claim or defense that he intends to prove by use of the privileged

---

[15] *Accord Wi-LAN, Inc. v. LG Elecs., Inc.*, 684 F.3d 1364, 1370 (Fed. Cir. 2012) ("The doctrine of implied waiver is invoked when a party makes the content of his attorney's advice relevant to some claim or defense in the case.  Even if the party does not expressly disclose the advice received, but only alludes to it, the privilege can be deemed waived by implication.").

[16] *Accord United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.").

[17] *Accord In re Grand Jury Procs.*, 219 F.3d at 183 ("Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.").

materials or when the privileged materials are indispensable to that party's claims or defenses. *Id.*[18]

Plaintiff argues that there has been an at-issue waiver because "Mr. Kallish's relationship with the patent counsel is directly at issue in this matter, and only the patent counsel can explain the evidence they held to make the determination to name Kallish as a co-inventor of the [p]atents." (ECF No. 92 at 8). But as Defendants argue, "it is the Plaintiff and not Defendants who have placed the communications with counsel at issue, and the Plaintiff cannot unilaterally create an implied waiver." (ECF No. 93 at 5). While the communications with patent counsel might be relevant to Plaintiff's claims, *Plaintiff* cannot unilaterally create an at-issue waiver. *Nimkoff*, 2016 WL 3042733, at *5; *see also Erie*, 546 F.3d at 229. It is true that Defendants' communications with patent counsel might become relevant to Defendants' defenses at some point. But as of now, Defendants have not yet filed their answer. So while Defendants might later choose to rely on their communications with patent counsel, they have not yet done so. Accordingly, Plaintiff has not established an at-issue waiver at this stage of the case. *Nimkoff*, 2016 WL 3042733, at *5; *see also Erie*, 546 F.3d at 229.

D. <u>Defendants' disclosure of only some communications does not result in a waiver.</u>

Where a party "makes the strategic decision to disclose some privileged information, the courts may find implied waiver" as to the remaining privileged information. *In re Grand Jury Procs.*, 219 F.3d at 184; *Robinson v. De Niro*, No. 19-cv-9156, 2022 WL 704922, at *6 (S.D.N.Y. Mar. 9, 2022) ("When there has been a selective disclosure of attorney-client

---

[18] *See also In re Grand Jury Procs.*, 219 F.3d at 182 ("[A] party cannot partially disclose privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."); *Windsor Secs., LLC v. Arent Fox LLP*, 273 F. Supp. 3d 512, 518 (S.D.N.Y. 2017) (explaining that the party must "affirmatively place[] the subject matter of its own privileged communication at issue in litigation").

communications in the litigation, courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed."). The selective disclosure waiver is also grounded in the "fairness considerations" that arise when a party attempts to use attorney-client privilege "both as 'a shield and a sword.'" *In re Grand Jury Procs.*, 219 F.3d at 182–84; *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A [party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). Thus, when a disclosure is made "outside of a litigation or extrajudicially, the scope of the waiver typically is limited to those matters actually revealed." *Robinson*, 2022 WL 704922, at *7; *see In re von Bulow*, 828 F.2d 94, 101–03 (2d Cir. 1987) (holding that privileged communications revealed to public in a book and not in litigation resulted in a waiver limited to specific communications or portions of communications disclosed).[19]

Plaintiff argues that "Kallish and the patent counsel intentionally disclosed numerous emails about the [p]atents to Plaintiff" and "Defendants' voluntary disclosure to Plaintiff of hundreds of attorney-client emails related to the [p]atents, result[ed] in a privilege waiver of all additional attorney-client communications concerning the same subject." (ECF No. 92 at 7–8 (internal quotation marks omitted)). The Court disagrees. First, as discussed earlier, these patent-related communications were disclosed to Plaintiff in her capacity as agent of Everyone's Earth, so that she could assist with prosecution of the patents. Thus, there was no "waiver" of the attorney-client privilege when disclosing these communications to Plaintiff, in the first instance. *See* Section IIIA, above. Second, the fairness considerations typically at play with at-

---

[19] *See, e.g.*, *Sanofi-Synthelabo v. Apotex Inc.*, 299 F. Supp. 2d 303, 308–09 (S.D.N.Y. 2004) (finding forfeiture of attorney-client privilege where, in the context of patent litigation, a party gave a partial explanation for its conduct before the Patent Office, when a complete explanation was relevant to the validity of the patent and was likely to be contained in privileged communications).

issue waivers do not apply here, because Defendants do not appear to be using attorney-client privilege "both as 'a shield and a sword.'" *In re Grand Jury Procs.*, 219 F.3d at 182–84.  The communications were disclosed to Plaintiff based on her role as inventor, which required her assistance in prosecuting the patents.  The communications were not disclosed to Plaintiff due to a "strategic decision," *id.* at 184, or for "self-serving purposes," *Bilzerian*, 926 F.2d at 1292.  Moreover, because the communications were disclosed to Plaintiff extrajudicially — when Plaintiff and patent counsel were communicating about information needed to prosecute the patents — the scope of any potential waiver would be limited to the communications revealed to Plaintiff.  *See In re von Bulow*, 828 F.2d at 101–03.  As explained below in Section IV, Plaintiff is already entitled to discover and present such communications here, without the need to resort to any waiver arguments.

**IV.    Whether Plaintiff May Rely on and Use Her Communications with Patent Counsel as Part of this Case**

Although Plaintiff's communications with patent counsel are privileged and not subject to waiver, this does not mean that Everyone's Earth can invoke that privilege to prohibit Plaintiff from relying on and using those materials here.  Sometimes privileged communications between parties may remain privileged as to the outside world, but not in a subsequent action between the two parties.  That circumstance applies here.

As discussed above, Plaintiff acted as an agent of Everyone's Earth in connection with her communications with patent counsel, and those communications did not destroy the privilege.  *See Upjohn*, 449 U.S. at 391.  Now, Everyone's Earth invokes attorney-client privilege over those communications in a subsequent action between Plaintiff and Everyone's Earth.  In analogous cases involving joint clients or parties with a common interest, courts have

limited the scope of the privilege in subsequent litigation between the parties.  For example, the disclosure of privileged communications between joint clients does not destroy privilege as to the "outside world," but the communications are not privileged in a subsequent action between the two joint clients.  *See Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 18 (2d Cir. 2020) (Summary Order).[20]  Similarly, where the common interest doctrine applies, the disclosure of such communications between parties and attorneys who have a common interest does not destroy the privilege as to the outside world, but such communications are not privileged vis-à-vis the parties if their interests are no longer aligned.  *See GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 2d 267, 280 (S.D.N.Y. 2005) ("The [common interest] doctrine dictates that the clients may not later assert the privilege against each other after their interests become adverse.") (internal quotation marks omitted).

Yet there is a dearth of caselaw addressing whether the principal (in this case, Everyone's Earth) may invoke attorney-client privilege for communications that the agent (in this case, Plaintiff) was privy to, in a subsequent action between the principal and agent.  The only cases involving even somewhat similar circumstances fail to mention the analogous context of joint clients.  *See Blankenship v. Rowntree*, 219 F.2d 597, 598–600 (10th Cir. 1955); *Foley v. Poschke*, 31 N.E.2d 845, 846 (Ohio 1941); *In re Estate of Busse*, 75 N.E.2d 36, 36–37 (Ill. App.

---

[20] *See supra* note 5; *see also In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) ("When the same attorney represents the interests of two or more entities on the same matter, those represented are viewed as joint clients for purposes of privilege."); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 104 (S.D.N.Y. 2009) ("When two or more persons jointly consult an attorney, their confidential communications with the attorney will of course be privileged in a controversy of either or both of the clients with the outside world.  However, where the two original clients fall out between themselves and become engaged in a controversy, it is clear that the privilege is inapplicable.") (alterations, citations, internal quotation marks omitted).

Ct. 1947).[21]  Legal scholars have similarly criticized such cases, suggesting that "an agent who

on behalf of the corporation has spoken to its attorney — like the attorney himself — should be

permitted to reveal confidential communications when necessary . . . to justify his fee or defend

his conduct."  David Simon, *The Attorney-Client Privilege As Applied to Corporations*, 65 YALE

L.J. 953, 988–89, 989 n.118 (1956) (suggesting that disclosure may be necessary when the

"subject matter of the controversy is so interwoven with the agency that there is no other way in

which the transaction can be fairly stated between the parties").[22]

 Here, the Court is persuaded that "the limitation on the privilege accepted in the joint

consultation cases should furnish a controlling analogy."  1 McCORMICK ON EVIDENCE § 91.1

(Robert P. Mosteller, ed., 8th ed. 2023).  The parties have told the Court that Plaintiff already

possesses copies of the communications with patent counsel that she participated in, as

Everyone's Earth's agent.  Because those communications were intentionally disclosed to

Plaintiff, though without waiver, she "rightfully possesses these materials" and it "seem[s]

---

[21] In *Blankenship*, the plaintiff served as the defendant's agent when delivering a written communication to defendant's counsel and the Tenth Circuit held that the disclosure of the communication was not allowed in plaintiff's action to recover business services rendered.  *Blankenship*, 219 F.2d at 598–600.

In *Foley*, a private detective, who had been hired by the defendant "to keep her husband . . . under surveillance," was present at the defendant's conference with an attorney.  When the detective sued the defendant to recover for personal services rendered, the detective sought to introduce a statement that the defendant had made at the conference with the attorney.  The Supreme Court of Ohio held that the detective could not introduce the statement. *Foley*, 31 N.E.2d at 846.

In *Busse*, a decedent's agent, who had served as the decedent's nurse and business caretaker, was present at a conference with the decedent's attorney, during which the decedent had promised the agent $5,000 after "The Elms" was sold.  When the agent sought to introduce the decedent's statement, the Appellate Court of Illinois held that the statement could not be introduced because it was an admission of indebtedness in the presence of the decedent's attorney, who was providing legal services as to the sale of "The Elms."  *Busse*, 75 N.E.2d at 36–37.

[22] *See also* Note, *Privileged Communication — Attorney and Client — Presence of Necessary Agent Does Not Destroy Privilege in Subsequent Suit by the Agent Against Client's Estate*, 61 HARV. L. REV. 717, 718 (1948) ("The self-interest which removes the seal in favor of the attorney, joint client, and joint consultant in *inter sese* suits logically would seem equally available to the agent in a similar circumstance.  Also, with respect to parties present there could be no intent that the communication be confidential.").

obvious [to the Court] that [Defendants] cannot prevent her from relying on them in

[prosecuting] her lawsuit against [Defendants]." *Newmarkets Partners, LLC v. Sal. Oppenheim*

*Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 104 (S.D.N.Y. 2009).  Here, "[u]nlike, for instance, in cases

where parties inadvertently disclose privileged material to an adversary, [Defendants] cannot

claim that [Plaintiff's] access to the documents in the first place is the result of a mistake, and

that they must be returned to avoid prejudice to [Defendants]." *Id.*  Indeed, it seems fair to

presume that there are no confidences or secrets to be kept from Plaintiff that Everyone's Earth

and patent counsel already shared with her.

Accordingly, the Court finds that Defendants may not limit Plaintiff's use of privileged

communications involving patent counsel that were intentionally disclosed to her outside this

litigation.  But as in cases involving subsequent litigation between joint clients, these privileged

communications remain privileged as to the "outside world." *Sampedro*, 818 F. App'x at 18;

*Newmarkets*, 258 F.R.D. at 104.  Therefore, Plaintiff's use of her privileged communications

with patent counsel must be limited to this litigation only and may not be disclosed publicly on

the docket or to anyone outside this litigation.

## V.    Whether the Crime-Fraud Exception Applies

"[I]t is well-established that communications that otherwise would be protected by the

attorney-client privilege or the attorney work product privilege are not protected if they relate to

client communications in furtherance of contemplated or ongoing criminal or fraudulent

conduct." *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995).  "[T]here is a societal interest

in enabling clients to get sound legal advice, [but] there is no such interest when the

communications or advice are intended to further the commission of a crime or fraud." *Id.*

Thus, the crime-fraud exception ensures "that the secrecy protecting the attorney-client

relationship does not extend to communications or work product made for the purpose of getting advice for the commission of a fraud or crime." *Id.* (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal quotations omitted)).

In the Second Circuit, a party seeking to invoke the crime-fraud exception must at least demonstrate that there is a factual basis for a showing of "probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." *Id.*; *see also United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997), *abrogated in part on other grounds by Loughrin v. United States*, 573 U.S. 351, 355, 355 n.2 (2014). The Second Circuit has defined "probable cause" in this context to mean "a reasonable basis for believing that the objective was fraudulent." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984); *accord Agoado v. Midland Funding*, No. 14-cv-18, 2021 WL 4355864, at *2 (E.D.N.Y. Sept. 23, 2021). "This is a two-step process." *Jacobs*, 117 F.3d at 87. "First, the proposed factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Id.* (quoting *In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir. 1994)). "Once there is a showing of a factual basis, the decision whether to engage in an *in camera* review of the evidence lies in the discretion of the district court." *Id.* "Second, if and when there has been an *in camera* review, the district court exercises its discretion again to determine whether the facts are such that the exception applies." *Id.* In other words, a party must establish a factual basis, supported with evidence, showing probable cause that a crime or fraud has been committed (step one) *before* the Court can conduct an *in camera* review (step two) to determine whether the communications were in furtherance of an actual or attempted crime or fraud. *See Zolin*, 491 U.S. at 574–75; *Jacobs*, 117 F.3d at 87.

23

In the Federal Circuit,[23] a party must establish "*Walker-Process* fraud, also known as common law fraud," to successfully pierce the attorney-client privilege under the crime-fraud exception.[24]  *Unigene Lab'ys v. Apotex, Inc.*, 655 F.3d 1352, 1358 (Fed. Cir. 2011) (citing *Walker-Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)).  "A finding of common law fraud in the patent context must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance."  *Unigene Lab'ys*, 655 F.3d at 1358–59 (internal quotation marks omitted).  "Such independent and clear evidence must establish a prima facie case of fraud, which is generally held *not* to exist unless the accusing party can show: (1) a representation of material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation."  *Id.* at 1359 (internal quotation marks omitted).

Plaintiff bases her crime-fraud exception argument on Mr. Kallish having "committed fraud and inequitable conduct on the USPTO, and [having] utilized the legal services of the patent attorneys in the commission thereof."  (ECF No. 92 at 17)  She asserts that "there is probable cause that Kallish knowingly misrepresented his inventorship of the [p]atents to the

---

[23] The Federal Circuit "applies its own law to a district court's application of the crime-fraud exception to the attorney-client privilege."  *Unigene Lab'ys, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1358 (Fed. Cir. 2011).

[24] *Walker-Process* or common law fraud is distinguished from "inequitable conduct," which is "a lesser offense than common law fraud, and includes types of conduct less serious than 'knowing and willful' fraud."  *In re Spalding Sports Worldwide*, 203 F.3d at 807.  "Inequitable conduct" is a doctrine that evolved from several "unclean hands cases," which involved "particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011).  It then "came to embrace a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts but also the mere nondisclosure of information to the PTO."  *Id.*

USPTO" because he "sign[ed] a declaration, under penalty of perjury, that he was an inventor of the [p]atents when he contributed nothing to the development of the inventions," as required by 35 U.S.C. § 116.[25] (*Id.* at 19).  According to Plaintiff, "[s]ince a determination of inventorship is a highly complex question of law, Plaintiff relied on the professional judgment of patent counsel" as to the decision to name Mr. Kallish as a co-inventor.  (*Id.* (citation and internal quotation marks omitted)).

While Plaintiff's crime-fraud argument raises serious and concerning allegations, she has not met her burden of establishing the crime-fraud exception, under either Second Circuit or Federal Circuit precedent.  The "fraud" at the heart of Plaintiff's argument is that Mr. Kallish misrepresented his inventorship of the patents to the USPTO.  This fraud, in turn, depends on the underlying factual premise that Mr. Kallish did not contribute to the inventions.  Thus, Plaintiff's crime-fraud argument requires her to show probable cause that Mr. Kallish "contributed nothing to the development of the inventions" (ECF No. 92 at 19) — which happens to be a hotly disputed factual issue in the case.  Here, Plaintiff identifies a series of Bates numbers to support her argument, but none of those items have been submitted to the Court.  (*See id.* at 20–23).  The exhibits that Plaintiff attaches to her memorandum of law fair no better.  Exhibit A is a Declaration from Plaintiff that describes, among other things, statements Mr. Kallish made to her about the patents and Plaintiff's assertion that Mr. Kallish did not contribute to the inventions.  (*See* ECF No. 92-1).  For example, she declares that "patent counsel wrongly added [Mr.] Kallish as a joint inventor" because Mr. "Kallish did not contribute in any manner to the

---

[25] Under 35 U.S.C. § 116(a), "[w]hen an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath."  Under 35 U.S.C. § 115(b), the oath requires "statements that — (1) the application was made or was authorized to be made by the affiant or declarant; and (2) such individual believes himself or herself to be the original inventor or an original joint inventor of a claimed invention in the application."

technical design or any of the claims comprising the [p]atents." (*Id.* at 2).  Rather, Mr. "Kallish

stated that he had the idea for the inventions and this made him an inventor." (*Id.*).  But these

conclusory assertions — without more — provide an insufficient factual basis to show probable

cause that Mr. Kallish did not contribute to the inventions.  *See Yutong Jin v. Choi*, No. 20-cv-

9129, 2021 WL 738843, at *4 (S.D.N.Y. Feb. 24, 2021) ("Because [plaintiff] relies solely on

allegations and speculation, [p]laintiff has failed to meet her burden to trigger the crime-fraud

exception").[26]  Exhibit B appears to be a privilege log, but Plaintiff provides no basis for the

Court to know or understand what those documents purport to show.  (*See* ECF No. 92-2).  Thus,

Plaintiff has submitted insufficient evidence to allow the Court to evaluate whether "there is

probable cause to believe that a crime or fraud has been attempted or committed and that the

communications were in furtherance thereof," *Roe*, 68 F.3d at 40, or whether there is clear

evidence of *Walker-Process*/common law fraud, *Unigene Lab'ys*, 655 F.3d at 1358–59.  Because

Plaintiff has failed to meet her burden (under step one) to submit evidence establishing probable

cause, the Court will not proceed to step two, and order an *in camera* review of the documents to

determine whether the crime-fraud exception applies.  *See Zolin*, 491 U.S. at 574–75 ("[B]efore a

district court may engage in *in camera* review at the request of the party opposing the privilege,

---

[26] *See also United States v. Chen*, 99 F.3d 1495, 1503 (9th Cir. 1996) ("Mere allegations or suspicion . . . are insufficient . . . to justify application of the crime-fraud exception."); *In re Grand Jury Investigation*, 842 F.2d 1223, 1226 (11th Cir. 1987) ("Mere allegations of criminality are insufficient to warrant application of the exception."); *Conopco, Inc. v. Wein*, No. 05-cv-9899, 2007 WL 1859757, at *8 (S.D.N.Y. June 28, 2007) ("[T]he allegations in the Complaint cannot suffice to establish probable cause to believe that a fraud was perpetrated.  Otherwise, through the mere allegation of fraud in a complaint, a party could use the crime-fraud exception to wholly swallow the attorney-client privilege."); *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21-95, 2003 WL 22389169, at *6 (S.D.N.Y. Oct. 21, 2003) ("[C]onclusory allegations of criminal or fraudulent intent such as these would not strike a prudent person as constituting a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, or that the communications at issue were in furtherance thereof.") (internal quotation marks omitted).

that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability.").

Accordingly, Plaintiff has not met her burden of establishing the crime fraud exception.

## **CONCLUSION**

For these reasons, Defendants' Motion for a Protective Order is **GRANTED** in part and **DENIED** in part.  The communications between Everyone's Earth — including those communications facilitated by Everyone's Earth's agents — and patent counsel are subject to attorney-client privilege and that privilege belongs solely to Everyone's Earth.  Thus, Plaintiff may not discover documents or communications between Defendants and patent counsel to which she was not directly privy.  But in this subsequent litigation between Plaintiff and Everyone's Earth, Plaintiff may rely on and use those privileged communications with patent counsel that were previously sent to her.  While Plaintiff may use those communications during this action, the communications remain privileged as to the "outside world."  Plaintiff's use of her privileged communications with patent counsel is limited to this litigation only and may not be disclosed publicly on the docket or to anyone outside this litigation.

The Clerk of Court is respectfully directed to terminate the pending letter motions at ECF Nos. 69, 71, and 78.

**SO ORDERED.**

DATED:        White Plains, New York
                November 22, 2023

VICTORIA REZNIK
United States Magistrate Judge

27