```
                                                    ┌──────────────────────────┐
                                                    │ USDC SDNY                │
                                                    │ DOCUMENT                 │
                                                    │ ELECTRONICALLY FILED     │
                                                    │ DOC #: _____           │
                                                    │ DATE FILED:_  1/17/2024  │
                                                    └──────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

Nicole Richards,

                                        Plaintiff,                          22-cv-9095 (CS) (VR)

                    -against-                                               **OPINION & ORDER**

Thomas C. Kallish, et al.,

                                        Defendants.
-----------------------------------------------------------------X

**VICTORIA REZNIK, United States Magistrate Judge:**

        This opinion resolves the parties' cross-motions to impose discovery sanctions upon each

other pursuant to Rule 37 of the Federal Rules of Civil Procedure.  By Letter Motion, Defendants

moved to impose Rule 37(b) sanctions upon Plaintiff, asserting that Plaintiff's counsel violated

the Confidentiality Order by sending Attorneys' Eyes Only (AEO) designated documents to

Plaintiff.  (ECF No. 105).  Plaintiff then cross-moved to impose Rule 37 sanctions upon

Defendants, asserting that "Defendants engaged in a series of actions, orchestrated by counsel in

bad faith, to evade their discovery obligations, including flagrantly violating two orders of the

Court specifically directing Defendants to produce the withheld documents."  (ECF No. 107).

The Court received the parties' submissions (ECF Nos. 106, 110, 112, 115, 118), and heard oral

argument on the parties' cross motions (ECF 10/19/2023 Minute Entry).

        For the reasons explained below, the parties' cross-motions are **DENIED**.

## I.        BACKGROUND

### A.  Facts Underlying Defendants' Rule 37(b) Motion[1]

        On August 30, 2023, Ms. Leslie Cahill (Defendants' Counsel) sent an email to Ms.

Claudia Pollak (Plaintiff's Counsel), stating that Defendants would be producing documents and

---

[1] The facts set forth in this section are drawn from the exhibits annexed to Defendants' Rule 37(b) motion.

"due to the highly sensitive nature of these documents, some will warrant an 'Attorney's Eyes Only' designation." (ECF No. 105-1 at 2).[2] Ms. Cahill further wrote, "[w]e will likely need to meet and confer with you about that designation, as required by our Protective Order." (*Id.*).

On September 7, 2023, Ms. Cahill provided an update to Ms. Pollak on the status of the document production, stating "as I mentioned previously, we will be seeking an 'Attorney's Eyes Only' designation for a minority of the documents." (*Id.* at 7). She added that "if [Ms. Pollak] ha[d] questions or concerns about certain of the [AEO] designations, [Defendants would] be happy to meet and confer with [Ms. Pollak] on specific topics." (*Id.* at 8).

On September 12, 2023, Ms. Pollak responded, "[a]fter we receive the documents which you intend to designate attorney-eyes only, we will likely submit a letter motion to the judge about this matter as Plaintiff will be highly prejudiced by the breadth of documents you appear to be referencing." (*Id.* at 6–7). Ms. Cahill responded, "Re: the AEO designation, I suggest you review what we produce and that we have a meet and confer (as required by our Protective Order) before you file anything with the Court. I should be able to get you our full production within the next week." (*Id.* at 6).

On September 15, 2023, Ms. Pollak "request[ed] that the documents be produced" that day. (*Id.* at 11). Ms. Cahill responded that "the documents [were] in their final production phase with [Defendants'] discovery vendor" and that "they w[ould] be ready by Monday" (September 18, 2023). (*Id.*). Ms. Pollak responded, "[p]lease have the production sent no later than noon or we will be submitting a letter to the judge about the long delay." (*Id.* at 10–11).

On September 18, 2023, at 11:13 AM, Ms. Cahill emailed Ms. Pollak a link to the production of documents. (*Id.* at 15). The email's subject line stated, "Defendants' Production"

---

[2] All page numbers to documents filed on ECF refer to the ECF page numbers at the top of the page.

and the email stated, in part, "[p]lease also note the inclusion of the 'Highly Confidential/ Attorney's Eyes Only' designation on certain of the documents." (*Id.*). Ms. Cahill attached a cover letter, which stated, in part, "[a]s noted in our prior correspondence, certain documents have been designated 'Attorney's Eyes Only' due to" the nature of the documents. (*Id.* at 16).

At 6:01 PM, Ms. Pollak emailed, objecting to the AEO designations, and asking Ms. Cahill to identify which of the 33,000 documents were designated as such. (*Id.* at 19–20). She also expressed concern that non-AEO and AEO documents were mixed together. (*Id.*). At 9:21 PM, Ms. Cahill replied that she had repeatedly offered a meet-and-confer, it did not "make any sense" to meet and confer before producing the AEO documents, and she was providing a new version of the production that contained individual PDF files so that Ms. Pollak could separate the AEO documents. (*Id.* at 18–19).

On September 22, 2023, Defendants' e-discovery vendor shared the file activity log for Defendants' two versions of the production, which revealed that Plaintiff Nicole Richards had personally downloaded the first version on September 18, 2023, at 1:31 PM, and the second version on September 19, 2023, at 9:58 AM. (*Id.* at 22–23). Upon learning that Ms. Richards had downloaded both productions, Ms. Cahill emailed Ms. Pollak, asking for an explanation. (*Id.* at 27). Ms. Pollak responded that she had "specifically instructed the Plaintiff not to open any of the Attorney Eyes Only designated documents, and at no point did the Plaintiff open or otherwise view these documents." (*Id.*). She also offered to "provide an affidavit from the plaintiff confirming that she has not viewed any documents designated AEO." (*Id.*).

Ms. Cahill asked for the affidavit, confirming that Ms. Richards had not viewed any of the AEO documents and that she no longer possessed documents. (*Id.* at 26). Ms. Pollak responded that the first production had been deleted on September 18, 2023, and the second

3

production had been "deleted as soon as [the AEO documents] were separated out of the folders that also contained general documents." (*Id.* at 25). Ms. Cahill replied, "[n]one of this justifies having given custody of ALL of the documents to your client, or having apparently delegated the responsibility of sorting the documents to your client." (*Id.*). Later that day, Ms. Richards executed a declaration, stating that she "did not view any files sent by Defendants on September 18, 2023 and September 19, 2023," and "[n]o files sent by Defendants on the foregoing dates are stored or otherwise accessible on any computer or other electronic device controlled by me." (*Id.* at 30).

**B. Defendants' Rule 37(b) Motion**

On September 23, 2023, Defendants filed their Rule 37(b) motion. (ECF No. 105). They argue that Rule 37(b) sanctions are warranted because of Ms. Pollak's failure to abide by the Confidentiality Stipulation and Protective Order. (*Id.* at 2). Defendants explain that they had "repeatedly flagged" to Ms. Pollak that their then-forthcoming production would contain AEO-designated documents. (*Id.* at 3). Yet Ms. Pollak "recklessly and irresponsibly exposed thousands of pages of Defendants' highly sensitive commercial information" to Ms. Richards. (*Id.*). Defendants request that the Court order:

(1) Ms. Richards to execute a new affidavit, attesting that (a) she did not disclose any documents received from Defendants during litigation, whether marked AEO or otherwise, to anyone, and had not otherwise used such documents for any purpose other than litigation, and (b) that she did not view any of the AEO documents and she deleted both versions of Defendants' production.

(2) Ms. Pollak to execute an addendum to the Confidentiality Stipulation and Protective Order, averring that she would not provide Ms. Richards with access to any AEO documents, and that Ms. Pollak would maintain sole custody of any AEO documents.

(3) Ms. Pollak to pay Defendants' attorney's fees and the costs of Defendants' e-discovery vendor for investigating the instant violation and the filing of this motion.

4

(4) Ms. Pollak to pay the costs of ongoing monitoring by Defendants' e-discovery vendor to prevent future violations of the Confidentiality Stipulation and Protective Order.

(*Id.*).

Ms. Pollak's response does not refute that she had provided Ms. Richards with access to the AEO documents.  (ECF No. 106).  Instead, she argues that the AEO designations were inappropriate because Defendants had "unilaterally" designated them as such, "without first requesting a meet and confer as required under the Protective Order."  (*Id.* at 1).  Ms. Pollak also states that she "inadvertently" provided the first production to Ms. Richards because she "did not initially see" the cover letter that stated that Defendants had included the AEO documents among the 33,000 pages they had produced.  (*Id.*).  But "within minutes of determining" that the AEO documents had been included, Ms. Pollak directed Ms. Richards "to delete the entire production."  (*Id.* at 2).  Ms. Pollak explains that after she objected to Defendants' production, Ms. Cahill sent the second version of the production which, "unbeknownst" to Ms. Pollak, "again contained" the AEO documents, and which Ms. Pollak again "inadvertently forwarded to [Ms. Richards] for review."  (*Id.*).  Ms. Pollak says she "immediately instructed [Ms. Richards] to avoid opening any documents until sorting out the AEO labeled documents, and to then immediately delete any AEO labeled files, which [Ms. Richards] did immediately."  (*Id.*).

Ms. Pollak also explains that Ms. Richards, who lacks the resources available to Defendants, and "is best suited to understand the relevancy of the produced documents in relation to her claims," had been reviewing, and personally downloading, all of Defendants' prior productions.  (*Id.*).  So, Defendants "had full knowledge that it was [Ms. Richards] who was accessing the documents" and yet, Defendants "refus[ed] to take any precautions to send the documents separately . . . to avoid any confusion" about the AEO documents.  (*Id.*).

Ms. Pollak also argues that: (1) AEO designations are to "be made as sparingly as possible" and Defendants inappropriately so designated "thousands of pages;" (2) sanctions imposed under the Court's "inherent authority" requires a finding that counsel was "motivated by improper purposes" and Ms. Pollak's conduct resulted from inadvertence; and (3) sanctions would be inappropriate because Ms. Pollak had taken remedial steps to ensure that Ms. Richards did not view the AEO documents and that she deleted the documents.  (*Id.* at 2–3).

Ms. Pollak also attached a revised declaration from Ms. Richards, stating that she had "not disclosed any" confidential documents, nor had she "used such Confidential Information for any purpose other than litigation."  (ECF No. 106-1 at 4).  She also confirmed that she had "not, at any point, viewed any of the material that Defendants had marked as 'Attorney's Eyes Only'" and that she had "deleted the two productions."  (*Id.*).

### C.  Plaintiff's Rule 37 Cross-Motion

On September 25, 2023, Plaintiff filed her cross-motion to impose Rule 37 discovery sanctions upon Defendants, arguing that Defendants acted in bad faith by refusing to produce damages-related documents and attorney invoices, despite a ruling or directive from Judge Seibel and Judge McCarthy.  (ECF No. 107 at 1–3).  Plaintiff was thus forced to move to compel Defendants to produce the documents.  (*Id.*).  Plaintiff asserts that at a January 31, 2023, judicial conference, Judge Seibel "den[ied] Defendants request for a stay pending the outcome of their motion to dismiss."  (*Id.* at 1).  Yet on March 30, 2023, Defendants objected to some of Plaintiff's document requests because if Defendants prevail on their motion to dismiss, the only remaining count in the complaint would be a claim for declaratory relief.  (*Id.* at 2; *see* ECF No. 107-1 at 3).  Defendants explained that they should not be burdened by producing damages-related documents that had no relevance to that claim for declaratory relief.  (ECF No. 107-1 at

6

3).  Following several meet-and-confers, Plaintiff threatened to move to compel, which caused

Defendants to move, on April 18, 2023, for a protective order for a partial stay of discovery

pending the outcome of the motion to dismiss.  (ECF No. 107 at 2–3).  Plaintiff also argues that

at a May 22, 2023, conference, Judge McCarthy "directed Defendants to produce the attorney

invoices, to which Defendants counsel Leslie Cahill agreed, after they had erroneously refused to

provide them for several months on the false premise that attorney invoices are subject to the

attorney-client privilege."  (*Id.* at 1).  Yet Defendants withheld the invoices and damages-related

documents, forcing Plaintiff to move to compel.  (*Id.*).  Plaintiff also argues that on July 11,

2023, the undersigned directed Defendants to produce the invoices, and on August 10, 2023, the

undersigned denied Defendants' motion for a protective order and for a partial stay.  (*Id.*).

In response, Defendants argue that "there is no order from Judge Seibel denying

Defendants' request for a stay of discovery."  (ECF No. 110 at 3).  Instead, Defendants assert

that at the January 31, 2023, conference, the parties discussed the scope of discovery and Judge

Seibel agreed that discovery should be stayed as to "Kane 11."  (*Id.*).  While Defendants might

have "signaled that they thought discovery should be stayed given the lack of viability of the

claims supporting the Plaintiff's request for damages," Defendants assert that they did not make

such a motion and no order was issued at that time.  (*Id.*).  Defendants did not move for a stay

until April 18, 2023.  (*Id.*).  Similarly, Defendants argue that Judge McCarthy never "directed"

Defendants to produce the invoices.  (*Id.*).  Rather, Defendants expressed their view that if the

invoices were to be produced, they should be redacted for any privileged time entries, but Judge

McCarthy took the issues under advisement.  (*Id.*).  Because Plaintiff had claimed that she was a

"joint client" of patent counsel and was entitled to all privileged materials, Defendants state that

they "sought to avoid the time and expense of incorporating redactions to invoices that they

knew the Plaintiff would object to until the parties received some clarity from the Court on that

issue." (*Id.*).  When the Court provided "that clarity, Defendants produced all of the redacted

invoices." (*Id.*).  Defendants thus argue that they did not act in bad faith.  (*Id.*).

On reply, Plaintiff reiterates that Judge Seibel had issued a "written decision," stating that

"because Defendant[s] will not be moving to dismiss the Complaint in its entirety, discovery can

commence." (ECF No. 118 at 1).  In support, Plaintiff attaches a copy of a text order from Judge

Seibel reflecting the same.  (ECF No. 118-1 at 2).  As for the attorney invoices, Plaintiff argues

that during Judge McCarthy's May 22, 2023, status conference, Judge McCarthy asked Ms.

Cahill, "I'm not quite sure why you're withholding attorney invoices.  I understand you might

need to redact, depending on what's on that invoice, but why are you withholding things like that

completely?" (ECF No. 118 at 2).  Ms. Cahill responded that she understood Plaintiff to "want

the unredacted version of the invoices." (*Id.*).  The discussion concluded with Ms. Cahill stating,

"[s]o to the extent we're being asked to produce redacted invoices, if that's the case, we can do

that." (*Id.* at 3).  Plaintiff thus argues that Ms. Cahill should have known that she needed to

produce the invoices, but she refused to do so, forcing Plaintiff to move to compel.  (*Id.*).

## II.   DISCUSSION

### A.  Applicable Law

Under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, the Court may "impose

on a party who has failed to obey a discovery order a 'just' sanction." *Chevron Corp. v.

Donziger*, 833 F.3d 74, 147 (2d Cir. 2016).  Rule 37(b)(2)(C) provides that "[i]nstead of or in

addition to" the sanctions listed in Rule 37(b)(2)(A),[3] "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

"Imposing sanctions pursuant to Rule 37 is within the discretion of the district court . . . ."  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (internal quotation marks omitted).[4]  In exercising such discretion, the Court must consider a number of non-exclusive factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  *Id.* (alterations and internal quotation marks omitted). Rule 37 sanctions also "should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general." *Abouelmakarem v. MDNMA Inc.*, No. 21-cv-10625, 2023 WL 3559392, at *6 (S.D.N.Y. May 18, 2023).

"Sanctions may be granted against a party under Rule 37(b)(2) if there is noncompliance

---

[3] Such sanctions may include: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.  Fed. R. Civ. P. 37(b)(2)(A).

[4] Consonant with the Court's "wide discretion" in considering sanctions, the Second Circuit has cautioned that "Courts should be sensitive to the impact of sanctions on attorneys," as "[t]hey can be economically punishing, as well as professionally harmful."  *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986); *accord Olive Grp. N. Am. LLC v. Afg. Int'l Bank*, No. 21-cv-10836, 2023 WL 2644350, at *7 (S.D.N.Y. Mar. 27, 2023).

9

with an order, notwithstanding a lack of wil[l]fulness or bad faith, although such factors are relevant to the sanction to be imposed for the failure." *Id.* (alterations and internal quotation marks omitted).[5]  But a finding of bad faith or willfulness is required to impose "severe" Rule 37(b) sanctions, such as dismissal or striking a pleading.  *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 450–51 (2d Cir. 2013).[6]  On the other end of the spectrum, "[t]he 'mildest' sanction specifically enumerated under Rule 37(b) is an order that the party who violated the discovery order at issue, or the attorney advising that party, be required to reimburse the opposing party for expenses caused by the violation."  *Jay v. Spectrum Brands Holdings, Inc.*, No. 13-cv-8137, 2015 WL 6437581, at *12 (S.D.N.Y. Oct. 20, 2015).[7]

### B.  Defendants' Rule 37(b) Motion

Defendants argue that the Court should impose Rule 37(b) sanctions upon Ms. Pollak for violating the Confidentiality Stipulation and Protective Order that was so ordered by the Court on April 20, 2023, by disclosing AEO documents to Ms. Richards.  (ECF Nos. 66, 105).  As explained below, although the Court finds Ms. Pollak's conduct unjustified and potentially sanctionable, the Court concludes that sanctions are unwarranted here.

---

[5] *Accord Perez v. Edwards*, No. 20-cv-1359, 2023 WL 5935029, at *3 (S.D.N.Y. Sept. 12, 2023) ("In deciding whether sanctions are merited under Rule 16(f) or 37(b)(2), the Court need not find that the party acted in bad faith. The Court need find only that there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order.") (citation and internal quotation marks omitted).

[6] Separate from Rule 37(b), the Court has "inherent power" to impose sanctions, which requires a finding of bad faith, vexatiousness, or wantonness.  *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141–42 (2d Cir. 2023); *Int'l Techs. Mktg. v. Verint Sys.*, 991 F.3d 361, 368 (2d Cir. 2021).  That said, "[a] court may impose costs as sanctions against an attorney who has 'negligently or recklessly failed to perform his responsibilities as an officer of the court.'"  *Google LLC v. Starovikov*, No. 21-cv-10260, 2022 WL 16948296, at *13 (S.D.N.Y. Nov. 15, 2022) (quoting *Int'l Techs. Mktg.*, 991 F.3d at 368 n.5).

[7] *See Cine Forty-Second St. Theatre v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (explaining that Rule 37 "provides a spectrum of sanctions" and "[t]he mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate").

    1.  <u>Ms. Pollak Violated the Confidentiality Stipulation and Protective Order</u>

The parties' Confidentiality Stipulation and Protective Order did not delineate with specificity the procedure for designating and handling AEO-designated documents—only stating that "[t]he parties should meet and confer if any production requires a designation of 'For Attorneys' or Experts' Eyes Only.'" (ECF No. 66 at 3). That said, the term "attorneys' eyes only" is self-evident and the Confidentiality Stipulation and Protective Order contemplates that certain documents can be produced on such a basis. Also, as is the case here, "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *In re City of New York*, 607 F.3d 923, 935 (2d Cir. 2010); *see* Fed. R. Civ. P. 26(c)(1)(G) ("The court may, for good cause, issue an order to protect a party or person . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."). "The purpose of this form of limited disclosure is to prevent a *party* from viewing the sensitive information while nevertheless allowing the party's *lawyers* to litigate on the basis of that information." *In re City of New York*, 607 F.3d at 935–36. The Court thus believes that the disclosure of AEO documents to a client would violate the Confidentiality Stipulation and Protective Order and justify imposing sanctions under Rule 37(b)(2)(A). *See Bouchard Transp. Co. v. Tug M/V Ellen S. Bouchard*, No. 14-cv-1262, 2018 WL 1581992, at *1 (S.D.N.Y. Mar. 28, 2018) ("A protective order issued under Rule 26(c) can be enforced through Rule 37(b).") (alteration omitted); *see, e.g.*, *id.* at *1–2 (imposing Rule 37(b) sanctions where an attorney revealed AEO documents to an expert witness).

Here, Ms. Pollak admits that she twice forwarded emails containing Defendants' production to Ms. Richards, those productions contained AEO documents, and Ms. Richards

downloaded the documents.  (ECF No. 106 at 1).  Thus, Ms. Pollak violated the Confidentiality

Stipulation and Protective Order by transmitting AEO documents to Ms. Richards.

    2.  <u>Ms. Pollak's Violation Resulted from, at Best, Negligence, and at Worst,
Recklessness</u>

      Ms. Pollak claims that she forwarded the emails containing the AEO documents to Ms.

Richards "inadvertently."  (ECF No. 106 at 2).  Yet the facts indicate that Ms. Pollak's actions

were negligent, if not reckless.  Ms. Cahill sent Ms. Pollak three emails (on August 30, 2023,

September 7, 2023, and September 12, 2023) before producing the documents, which alerted Ms.

Pollak that Defendants' then-forthcoming production would include AEO documents.  (*See* ECF

No. 105-1 at 2, 6–8).  Ms. Pollak acknowledged that she understood that Defendants' production

would contain AEO documents because she responded to Ms. Cahill, stating "[a]fter we receive

the documents which you intend to designate attorney-eyes only, we will likely submit a letter

motion to the judge about this matter."  (*Id.* at 6–7).  Further, the email containing Defendants'

production contained a warning—both in the body of the email and in an attached cover letter—

that should have alerted Ms. Pollak to the existence of AEO documents in the production.  (*Id.* at

15–16).  Finally, after Ms. Pollak says she learned that the document production included AEO

documents, Ms. Cahill then produced for a second time the same documents (this time, divided

into individual files, with AEO-designations included in the file names).  (*Id.* at 18–20; ECF No.

106 at 2).  Yet Ms. Pollak again forwarded the documents to Ms. Richards.  (ECF Nos. 105-1 at

18–20; 106 at 2).  At best, Ms. Pollak failed to read Ms. Cahill's emails and forwarded them to

her client, and apparently forgot that the production would contain AEO documents.  At worst, it

appears that Ms. Pollak delegated the responsibility of reviewing the documents to her client and

directed her client to separate the AEO documents without looking at them.  Such conduct is

reckless.  It is inexplicable that Ms. Pollak would delegate responsibility of sorting AEO documents to her client.

Even so, the Court believes that Ms. Pollak lacked malintent.[8]  Ms. Pollak asserts that "within minutes of determining" that the first version of Defendants' production included AEO documents, she "directed [Ms. Richards] to delete the entire production" and Ms. Richards "did so immediately and without ever viewing any of the documents."  (ECF No. 106 at 2).  Similarly, as to the second version of the production, Ms. Pollak asserts that she "immediately instructed [Ms. Richards] to avoid opening any documents until sorting out the AEO labeled documents, and to then immediately delete any AEO labeled files, which [Ms. Richards] did immediately."  (*Id.*).  Further, Ms. Pollak has submitted a declaration from Ms. Richards, declaring, under the penalty of perjury, that she did not, at any point, view "any of the material that Defendants had marked as 'Attorney's Eyes Only'" and that she "deleted the two productions."  (ECF No. 106-1 at 4).

3.  Ms. Pollak's Remaining Arguments

Ms. Pollak asserts a series of arguments that the Court believes amount to inappropriate "blame-shifting" and "excuses" that do not convincingly justify or excuse her conduct.  First,

---

[8] Ms. Pollak argues that the Court must make a finding of bad faith to impose sanctions.  (*See* ECF No. 115 at 3).  That is true for sanctions imposed under the Court's inherent power.  *See Rossbach*, 81 F.4th at 141–42 ("A federal court may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (internal quotation marks omitted).  But the Court's power to sanction under Rule 37(b) is separate from the Court's inherent power to do so.  *See, e.g., City of Almaty v. Ablyazov*, No. 15-cv-5345, 2020 WL 5269554, at *1 (S.D.N.Y. Sept. 3, 2020) ("Separate from and in addition to its power to sanction under Rule 37, courts have the inherent power to punish parties for contempt and have discretion to fashion an appropriate sanction for conduct which abuses the judicial process.") (internal quotation marks omitted).  Rule 37(b) sanctions, less than dismissal or striking of a pleading, may be imposed "notwithstanding a lack of wil[l]fulness or bad faith, although such factors are relevant to the sanction to be imposed for the failure."  *Abouelmakarem*, 2023 WL 3559392, at *6 (alterations and internal quotation marks omitted); *accord Perez*, No. 20-cv-1359, 2023 WL 5935029, at *3 (S.D.N.Y. Feb. 28, 2023) ("In deciding whether sanctions are merited under Rule 16(f) or 37(b)(2), the Court need not find that the party acted in bad faith.  The Court need find only that there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order.") (citation and internal quotation marks omitted).

Ms. Pollak argues that Defendants needed to seek a meet-and-confer before designating

documents as AEO and that Defendants failed to apply their AEO designations sparingly.  (ECF

No. 106 at 1–2).  Whether Defendants "over-designated AEO information" and failed to

schedule a meet-and-confer "is beside the point" and does not justify Ms. Pollak's conduct.  *Jay*,

2015 WL 6437581, at *12.  While the Confidentiality Stipulation and Protective Order provided

that "[t]he parties should meet and confer if any production requires a designation of 'For

Attorneys' or Experts' Eyes Only,'" it did not state whether such a meet-and-confer should occur

before or after production.  (ECF No. 66 at 3).  Moreover, Ms. Cahill's emails offered to meet

and confer about the AEO designations.  (ECF No. 105-1 at 2, 6–8).  If Ms. Pollak believed that

Ms. Richards needed to know the contents of the AEO documents, then "counsel could—and

should—have requested de-designation of that information."  *Jay*, 2015 WL 6437581, at *12.

Second, Ms. Pollak argues that Defendants should have known that Ms. Richards was

personally downloading and reviewing Defendants' document productions because Ms. Richards

had been doing so since the beginning of discovery.  (ECF No. 106 at 2).  Again, the Court

rejects this argument because it inappropriately shifts blame upon Defendants.  Defendants

alerted Ms. Pollak at least three times that their production would contain AEO documents.

Whether Defendants should have known that Ms. Richards was personally downloading

documents does not excuse Ms. Pollak's apparent failure to carefully read Ms. Cahill's emails or

her apparent delegation of separating AEO documents to Ms. Richards.

Third, Ms. Pollak argues that by mixing the AEO documents with the rest of Defendants'

production, Defendants "evinced such extreme carelessness as to suggest that [they were] not

concerned with the protection they sought."  (ECF No. 115 at 1 (internal quotation marks

omitted)).  Again, this argument amounts to inappropriate blame-shifting.  That the documents

14

were mixed does not excuse Ms. Pollak's apparent failure to read Ms. Cahill's emails.  The remedy for such a production is not to direct the client to sort through the documents.

Finally, Ms. Pollak argues that Defendants failed to "include a notice in an email subject line in all caps and/or bold typeface with the wording 'CONFIDENTIAL'" and Defendants' email containing their second version of the document production had the link "buried at the bottom of a lengthy email."  *Id.* at 2.  Again, the Court rejects this argument as mere blame shifting.  Defendants' failure to include such a notice in the subject line does not excuse Ms. Pollak's apparent failure to recall that Defendants had thrice warned her that their then-forthcoming production would contain AEO documents. Nor does it excuse Ms. Pollak's apparent failure to read the body of Ms. Cahill's emails before forwarding them to her client.

    4.  <u>Even so, the Court Believes that Sanctions are Unwarranted</u>

Although the Court finds Ms. Pollak's conduct unjustified and potentially sanctionable, the Court concludes that sanctions are unwarranted here.  As discussed below, Ms. Pollak took immediate remedial measures, Defendants suffered no real prejudice, and there are measures short of sanctions that are available to the Court.

To begin with, Defendants' first two sanctions requests are moot.  Defendants first ask the Court to order Ms. Richards to execute an affidavit attesting that (a) she did not disclose any documents received during litigation to anyone and has not used the documents for any purpose other than litigation, and (b) she has not viewed the AEO documents and has deleted the productions she downloaded.  (ECF No. 105 at 3).  That declaration has already been obtained from Ms. Richards, who has declared, under penalty of perjury, that she did "not disclose[] any documents or portions" of confidential documents, nor did she "otherwise use[] any such Confidential Information for any purpose other than the litigation."  (ECF No. 106-1 at 4).  Ms.

Richards also confirmed that she did "not, at any point, view[] any of the material that Defendants had marked as 'Attorney's Eyes Only'" and that she "deleted the two productions." (*Id.*).  Because Ms. Richards has executed a declaration, addressing the same subject matter sought by Defendants, the Court need not order one to be executed.

Defendants next ask that Ms. Pollak execute an addendum to the Confidentiality Stipulation and Protective Order, averring that she would not provide Ms. Richards with access to any AEO documents and that Ms. Pollak would maintain sole custody of any AEO documents.  (ECF No. 105 at 3).  This request is also now moot.  At the end of the parties' discovery conference, the Court ordered the parties to prepare an addendum that would govern the parties' procedure for designating and handling AEO documents.  On October 24, 2023, the parties' submitted their stipulated Addendum to Confidentiality Stipulation and Protective Order, setting forth restrictions and procedures applicable to AEO documents, which the Court entered on October 25, 2023.  (ECF Nos. 125-2, 128).  For the sake of clarity, while the Court believes that Ms. Pollak's conduct required this addendum, the Court declines to characterize this measure as a "sanction."  *See Oliveri*, 803 F.2d at 1280 (cautioning courts to "be sensitive to the impact of sanctions on attorneys" because "[t]hey can be economically punishing, as well as professionally harmful").

The Court now turns to Defendants' third and fourth requests, which seek attorney's fees associated with filing this motion, expenses for investigating the instant violation, and the costs of ongoing monitoring by Defendants' e-discovery vendor to prevent future violations.  (ECF No. 105 at 3).  Exercising the "wide discretion" the Court enjoys in determining the appropriateness of sanctions, *World Wide Polymers*, 694 F.3d at 159, the Court finds monetary sanctions unwarranted.  *See* Fed. R. Civ. P. 37(b)(2)(C) (court need not issue sanctions if "other

16

circumstances make an award of expenses unjust").  The factors the Court must consider,

include: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the

efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the

non-compliant party had been warned of the consequences of noncompliance."  *World Wide*

*Polymers, Inc.*, 694 F.3d at 159 (alterations and internal quotation marks omitted).  First, as

explained above, the Court does not believe Ms. Pollak acted willfully, but acted negligently or

recklessly.  Ms. Pollak took immediate remedial steps to ensure that Ms. Richards did not view

the AEO documents, and that Ms. Richards deleted them.  As a result, any prejudice suffered by

Defendants was minimal.[9]  Second, the Court believes that there are measures short of financial

sanctions available to ensure future compliance with the parties' Confidentiality Stipulation and

Protective Order, such as the Addendum to that Protective Order entered by the parties.  Third,

the duration of noncompliance was minuscule because Ms. Pollak immediately directed Ms.

Richards not to view the AEO materials and to delete them.  Finally, though the fourth factor

favors awarding costs,[10] the Court exercises its decision to decline to impose a financial sanction

---

[9] The Second Circuit and "the Supreme Court[] have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions."  *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010).  Here, the Court is not applying a "no harm, no foul" approach.  Rather, the Court is acknowledging and weighing that "one purpose of Rule 37 sanctions may . . . be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations."  *Id.* at 148–49.  That purpose would not be met here in light of Defendants' lack of prejudice.

[10] This is because the Court does not believe that an attorney should need to be warned of the consequences of sharing AEO-designated documents with a client.  Moreover, Ms. Pollak was aware of the AEO provision in the Confidentiality Stipulation and Protective Order and received three warnings from Ms. Cahill that Defendants' then-forthcoming production would contain AEO-designated documents.

because the first three factors weigh against doing so.[11]

## C. Plaintiff's Rule 37 Cross-Motion

In her motion, Plaintiff argues that the Court should impose sanctions upon Defendants because they "flagrantly violat[ed] two orders of the Court specifically directing Defendants to produce the withheld documents." (ECF No. 107 at 1). Plaintiff's motion invokes Rule 37(b)(2)—the Court's power to impose sanctions for violating a Court's discovery order. But during the Court's October 19, 2023, Discovery Conference, Plaintiff argued that the Court should award costs because Defendants forced Plaintiff to move to compel and she prevailed on her motion. The Court's authority to impose attorney's fees to a party on a motion to compel, stems from Rule 37(a)(1), (5)(A). Fed. R. Civ. P. 37(a)(1), (5)(A).

### 1.   The Court Declines to Impose Sanctions Under Rule 37(b)(2)

Under Rule 37(b)(2)(A), the Court may impose sanctions—and attorneys' fees via Rule 37(b)(2)(C)—where "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Although the Court believes that Defendants engaged in some amount of discovery gamesmanship, their actions did not strictly defy a Court order, making sanctions unwarranted.

Plaintiff first argues that Defendants violated Judge Seibel's order that "den[ied] Defendants['] request for a stay pending the outcome of their motion to dismiss." (ECF No. 107 at 1). In her reply, Plaintiff writes that Judge Seibel issued a "written decision," stating that

---

[11] Notably, the policy goals of imposing Rule 37 sanctions would not be served by imposing an award of costs and expenses here. *See Abouelmakarem*, 2023 WL 3559392, at *6; *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976) (per curiam); *Cine Forty-Second St. Theatre*, 602 F.2d at 1066. Here, Ms. Pollak and Ms. Richards have not benefited from Ms. Pollak's forwarding of the AEO-designated documents to Ms. Richards because Ms. Richards never viewed the document and deleted them. The Court also believes that the goals of specific and general deterrence were satisfied by the parties' filing of the stipulated Addendum to Confidentiality Stipulation and Protective Order, which delineates clearer and more precise direction as to the designation and handling of AEO materials.

"because Defendant[s] will not be moving to dismiss the Complaint in its entirety, discovery can commence." (ECF No. 118 at 1). Plaintiff explains that "[d]espite Judge Seibel's clear ruling, [D]efendants' counsel adopted a legal position to withhold from discovery all documents that they unilaterally determined were related to damages on the basis that they will prevail on their motion to dismiss and therefore they should not be required to produce the documents." (*Id.* at 2). But Plaintiff's motion apparently conflates an order that "discovery can commence" (ECF No. 41), with a denial of a partial motion to stay. While the Court agrees that Defendants seemed to determine unilaterally that they were not required to produce damages-related documents for some time before formally seeking a partial motion to stay, there is no basis for the Court to conclude that Defendants *failed to obey* a discovery order by withholding those documents. Judge Seibel neither denied a partial motion to stay nor ordered production of damages-related documents. Thus, while Defendants may have engaged in discovery gamesmanship by withholding damages-related documents before seeking a partial motion to stay, the Court does not believe that Defendants' conduct was egregious enough to warrant Rule 37(b)(2) sanctions.

Similarly, in her motion, Plaintiff argues that Defendants violated a judicial conference directive from Judge McCarthy to produce attorney invoices by failing to produce them for months after the conference. (ECF No. 107 at 1). On reply, Plaintiff explains that during the conference, Judge McCarthy asked why Defendants were withholding the attorney invoices and based on the discussion, Defendants should have known that they needed to produce them. (ECF No. 118 at 2–3). Plaintiff apparently conflates a Court directive with the Court's pointed questions. Following the conference at issue, Judge McCarthy entered a minute entry, which provided that "[t]he Court heard arguments regarding the parties' outstanding discovery disputes,

and reserved ruling." (ECF 5/22/2023 Minute Entry). Though the Court believes that

Defendants caused unnecessary motion practice and delay in producing the invoices, because

Judge McCarthy did not issue a ruling, Defendants did not fail to obey an order by withholding

the invoices. Again, while the Court believes that Defendants engaged in some amount of

discovery gamesmanship, the Court does not believe that Defendants' conduct was egregious

enough to warrant Rule 37(b)(2) sanctions.

   2.   Fee-Shifting is Not Appropriate Under Rule 37 (a)(1), (5)(A)

   Under Rule 37(a)(1), "a party may move for an order compelling disclosure or

discovery." Fed. R. Civ. P. 37(a)(1). "If the motion is granted . . . the court must, after giving an

opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or

attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in

making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But "the court must

not order this payment if: (i) the movant filed the motion before attempting in good faith to

obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure,

response, or objection was substantially justified; or (iii) other circumstances make an award of

expenses unjust." *Id.*

   Although Defendants' conduct caused an unnecessary delay in production, the Court

finds fee-shifting unwarranted. Here, Defendants objected to producing damages-related

documents in response to Plaintiff's document demands because of their pending motion to

dismiss. (ECF No. 107-1 at 3). Rather than move for a partial motion to stay shortly after the

Court entered the Civil Case Discovery Plan and Scheduling Order (on February 2, 2023) (ECF

No. 46), Defendants delayed until April 18, 2023, to do so (ECF No. 58). In the interim,

Plaintiff threatened to move to compel. (*See* ECF No. 107 at 2–3). As noted above, Defendants

essentially gave themselves a de facto partial motion to stay by delaying their production and then moving for the stay only after Plaintiff threatened to move to compel. (*See* Section II.C.1, above). That does smack of discovery gamesmanship. But even so, Defendants' request for a partial stay was not entirely baseless, given that their pending motion would dismiss the only counts seeking damages. (*See* ECF Nos. 76, 76-1). And their delay in formally raising the issue with the Court (from February 2 to April 18, 2023) amounts to a delay of 75 days, which is unnecessarily long but not egregious enough to warrant fee-shifting.

Similarly, Defendants chose to withhold the production of attorney invoices for several months, even in redacted form, until the Court ordered them to do so. But there was some merit to Defendants' stated concern about producing documents subject to a larger attorney-client privilege dispute pending before the Court. Although the Court ultimately ruled against Defendants on this issue, the Court does not believe that Defendants' attempt to seek clarity on the attorney-client privilege issue before expending significant resources to redact hundreds of attorney invoices, warrants fee-shifting. *See* Fed. R. Civ. P. 1 (noting that parties are required to "secure the just, speedy, and *inexpensive* determination of every action and proceeding") (emphasis added).

### III.   CONCLUSION

For all these reasons, the parties cross-motions for Rule 37 sanctions are **DENIED**. The Clerk of Court is directed to the Clerk of Court is directed to terminate the pending letter motions at ECF Nos. 105 and 107.

**SO ORDERED.**

DATED:      White Plains, New York
               January 17, 2024

_____
VICTORIA REZNIK
United States Magistrate Judge

22