UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLE RICHARDS,

                 Plaintiff,

     -against-

THOMAS C. KALLISH and EVERYONE'S
EARTH, INC.

                Defendants.

ECF Case # 7:22-cv-09095

**PLAINTIFF NICOLE RICHARDS'**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................. 1

II. RELEVANT BACKGROUND FACTS ....................................................3

  1. Secret Transfer of Plaintiff's Patent to Himself (Exhibit A) ...................................3

  2. Refusal to Issue Shares Through the Option Agreements
    (Exhibits C-D) ..............................................................................4

  3. False Claims of Inventorship to Gain Patent Ownership Rights
    (Exhibits E-H) ..............................................................................5

  4. Efforts to Remove Plaintiff as an Inventor (Exhibit I) ...........................................7

III. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM
SOUNDS IN FRAUD .......................................................................8

  A. New York Applies the Fraud Statute of Limitations to
    Breach of Fiduciary Duty Claims Based on Intentional
    Deception ..................................................................................8

  B. Hall v. Middleton Demonstrates That Misappropriation of
    Patent Rights Through Misrepresentations, Concealment,
    and Self-Dealing Constitutes a Fraud-Based Breach of
    Fiduciary Duty ..............................................................................9

IV. PUNITIVE DAMAGES .......................................................................11

V. CONCLUSION ....................................................................................13

**TABLE OF AUTHORITIES**

*Balta v. Ayco Co., LP*,
626 F. Supp. 2d 347, LEXIS 42510 (W.D.N.Y. 2009)……………………..…………9

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
40 F.3d 1223, 1227 (Fed. Cir. 1994)……………………………………...…...6

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456, 1460 (Fed. Cir. 1998)……………………………………………6

*Giblin v. Murphy*,
73 N.Y.2d 769, 772 (1988)……………………………………………………11

*Hall v. Middleton*,
LEXIS 8378 (Sup. Ct. N.Y. County 2022)………………..…………………..10-12

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
12 N.Y.3d 132, 139 (2009)……………………………………………………8, 9

*Kaufman v. Cohen*,
760 N.Y.S.2d 157, LEXIS 5918 (1st Dep't 2003)……………………………………9

*Loengard v. Santa Fe Industries, Inc.*,
70 N.Y.2d 262, 266-67 (1987)……………………………….……………..11

*Monaghan v. Ford Motor Co.*,
71 A.D.3d 848 (2d Dep't 2010)…………………………………………………9

*Schottenstein v. Lee*,
LEXIS 23333, WL 515247 (S.D.N.Y. 2024)………………………….……………8

*Wimbledon Fin. Master Fund, Ltd. v. Hallac*,
192 A.D.3d 617, 618, 146 N.Y.S.3d 18, 19-20 (1st Dept. 2021)………………...1

## I.    PRELIMINARY STATEMENT

A cause of action for breach of fiduciary duty based on allegations of actual fraud is subject to a six-year limitations period. Plaintiff Nicole Richards' complaint alleges a claim of breach of fiduciary duty that is premised on fraud, and is thus subject to the six-year statute of limitations. See *Wimbledon Fin. Master Fund, Ltd. v. Hallac*, 192 A.D.3d 617, 618, 146 N.Y.S.3d 18, 19-20 (1st Dept. 2021).

Defendants' attempt to recast this action as a simple contract dispute fails as a matter of both fact and law. This case is not about a misunderstanding over compensation terms or an unfulfilled promise of stock. Rather, it arises from faithless fiduciary misconduct in which Defendant Thomas Kallish induced Plaintiff to assign her patents and devote years of uncompensated labor through repeated representations that she was a founder and owner of Defendant Everyone's Earth, while concealing material facts and acting for his own personal benefit, with the ultimate objective of misappropriating her patents.

Although the breach of fiduciary duty claim is based in part on Kallish's promises of ownership, newly discovered evidence demonstrates why Defendants' effort to characterize this case as merely one "sounding in contract" is fundamentally flawed. Plaintiff recently discovered a Patent Assignment Agreement filed by Defendants with the United States Patent and Trademark Office on December 22, 2016—which Defendants never produced despite discovery requests seeking agreements between Kallish and Everyone's Earth—revealing that, only weeks after Kallish induced Plaintiff to assign her patent to Everyone's Earth, he caused the company to transfer that same patent to himself for personal ownership. The evidence in this case is not indicative of a contractual disagreement, but rather, shows a fiduciary's use of his position of trust and concealment to misappropriate Plaintiff's patents—the very hallmarks of fraud.

1

Not only is the secret Assignment Agreement powerful evidence of concealment, self-dealing, and fraudulent motive by a fiduciary, but it also entirely refutes Defendants' contention that the June 7, 2017 Option Agreement fulfilled, replaced, or was equivalent to the "founder's shares" repeatedly promised to Plaintiff. Defendants have consistently argued that Plaintiff's claim sounds in contract because the parties' relationship was governed by the Option Agreement or arose from a mere promise of ownership. However, the newly discovered Assignment Agreement reveals that Everyone's Earth did not own Plaintiff's patent when the 2017 Option Agreement was issued. Thus, the Option Agreement purported to provide Plaintiff with an interest in an entity that no longer held the very asset Plaintiff had been induced to contribute, making it impossible to characterize the option as a replacement for the promised founder's ownership in the company that was supposed to own and exploit her intellectual property..

The significance of this concealment cannot be overstated. Kallish executed the assignment transferring Plaintiff's patent from Everyone's Earth to himself, concealed this fact from Plaintiff, failed to produce the Assignment Agreement in discovery, and nevertheless continued to advance the argument to the Court that when the 2017 Option Agreement was issued, it constituted the ownership interest he had promised in the company that would own and exploit Plaintiff's intellectual property. This conduct was not the product of a contractual misunderstanding, but rather, part of an intentional scheme to obtain Plaintiff's patents and labor through deception, concealment, and abuse of a fiduciary relationship.

Plaintiff presents evidence of multiple additional acts by Kallish undertaken in furtherance of this same motive, including false ownership representations, false inventorship claims, and even direct requests to patent counsel to remove Plaintiff as an inventor of her own patents and instead identify Kallish as the sole named inventor, despite having developed none of

2

the claims in the patents. This evidence is not extraneous to the claim for breach of fiduciary duty, but bears directly on Kallish's motive, intent, plan, concealment, and absence of innocent mistake. Under FRE 403, this information is probative of whether the alleged breach of fiduciary duty was accomplished through fraud, deception, and self-dealing. Plaintiff therefore respectfully requests clarification that the exhibits discussed below are admissible under FRE 403.

Accordingly, because fraud, concealment, and self-dealing are not incidental to Plaintiff's claim but are the means by which the fiduciary violations were accomplished, Plaintiff's breach of fiduciary duty claim sounds in fraud, is governed by the six-year statute of limitations applicable to fraud-based fiduciary duty claims, and supports an award of punitive damages.

## II.   RELEVANT BACKGROUND FACTS

The evidence demonstrates multiple independent acts undertaken in furtherance of the same objective: the misappropriation of Plaintiff's patents, intellectual property rights, and years of labor. Plaintiff does not offer the following evidence as separate claims, but rather, each category of evidence is probative of Kallish's motive, intent, plan, concealment, and absence of mistake, and Plaintiff respectfully requests that the Court consider this evidence as admissible under FRE 403.

1.   Secret Transfer of Plaintiff's Patent to Himself (Exhibit A)

Plaintiff seeks to present the newly discovered Assignment Agreement (Exhibit A) demonstrating that, on December 22, 2016, only two months after Plaintiff was induced by Kallish and Everyone's Earth's CEO, Chris Leyes, to assign her patent to Everyone's Earth, Kallish and Leyes caused the patent to be assigned from Everyone's Earth to Kallish alone. Plaintiff was never informed of this transfer, and the Assignment Agreement was never produced in discovery despite requests seeking all agreements between Kallish and Everyone's Earth.

3

This Assignment Agreement is probative of Kallish's fraudulent conduct because it directly contradicts Kallish's sworn deposition testimony concerning the intended ownership of the patents. The newly discovered Assignment Agreement demonstrates that, only weeks after Kallish and Plaintiff assigned their purported inventorship interests in Plaintiff's patent, Kallish caused the patent to be transferred from Everyone's Earth to himself personally.

In his deposition, Kallish testified that "Nicole and I from day one knew we were both assigning the patents to the company. So it didn't matter. *Nobody was going to own it individually*." (emphasis added) (Kallish Dep. at 64:22-25; Ex. B.) Yet the December 22, 2016 Assignment Agreement demonstrates that Kallish caused Plaintiff's patent to be transferred from Everyone's Earth to himself personally only weeks after Plaintiff assigned it to the company. The Assignment Agreement therefore directly contradicts Kallish's sworn testimony and is powerful evidence of deception and self-dealing. A jury could reasonably conclude that Kallish induced Plaintiff to assign her patent based on representations that it would belong to Everyone's Earth, while secretly obtaining personal ownership of it himself.

The Assignment Agreement also defeats Defendants' contention that the 2017 Option Agreement represented the promised "founder's shares" because Kallish knew that Everyone's Earth did not own Plaintiff's patent when these stock options were issued to her. Rather than providing Plaintiff ownership in the company that owned and exploited her invention, the 2017 Option Agreement purported to provide an interest in a shell company that did not own the asset to which Plaintiff had been induced to contribute.

2. Refusal to Issue Shares Through the Option Agreements (Exhibits C-D)

Plaintiff will present evidence at trial that, even after the issuance of the Option Agreements that Defendants now claim satisfied the promised "founder's shares," Kallish

4

refused to permit Plaintiff to obtain ownership through the exercise process set forth in the Option Agreements. (See Exhibits C and D.)

A few days after Plaintiff received the 2017 Option Agreement, she submitted a written notice of exercise to Everyone's Earth's CEO, Chris Leyes, but the company failed to issue the stock. Plaintiff will testify that Leyes confusingly informed her that it "doesn't work that way" and there is no need for her to exercise her options because "she already owned her shares." In 2022, she requested a partial exercise, which is expressly permitted by the agreement. However, Kallish nevertheless refused, responding by email on February 4, 2022 that "unfortunately, it doesn't work that way," despite the agreements providing otherwise, at the same time assuring Plaintiff that she had "nothing to worry about."  See Exhibit D.

This evidence is probative of Kallish's intent and motive to misappropriate her patents while never providing her with the ownership interest he repeatedly promised, whether through "founder's shares" or through the Option Agreements. Thus, rather than a contractual dispute, the evidence supports a finding that the alleged breach of fiduciary duty was accomplished through deception and concealment, and therefore sounds in fraud.

3. <u>False Claims of Inventorship to Gain Patent Ownership Rights (Exhibit E-G)</u>

If permitted by the Court pursuant to FRE 403 to prove the underlying motive of misappropriation, Plaintiff seeks to present evidence that Kallish repeatedly claimed to be an inventor of Plaintiff's patents, signed inventor declarations under penalty of perjury asserting inventorship, and then used his inventorship rights as leverage to pressure Plaintiff into assigning patents that she otherwise solely owned.

Plaintiff is not litigating inventorship. Rather, this evidence is offered under FRE 403 because it demonstrates Kallish's motive and intent to misappropriate Plaintiff's patents without

providing her the ownership interest in the entity owning her patents, as he repeatedly promised. The evidence is relevant because Kallish's recent explanation to this Court for why he claimed to be an inventor directly contradicts his sworn deposition testimony. During his deposition, when asked, "Which number of claim or claims in the diaper patent did you contribute to?", Kallish responded, "all," and "one through nineteen." (Kallish Dep. at 71:18-22; Ex. E.) He made the same representation concerning the second patent.

Yet, when questioned by the Court at the June 11, 2026 pretrial conference regarding the basis for his inventorship claim, Kallish could not identify a single patent claim that he conceived or developed. Instead, Kallish asserted that he was an inventor because the biodegradable diaper product was his idea and because he participated in patent prosecution discussions. However, the explanation provided to the Court is belied by the attached USPTO interview minutes and correspondence from patent counsel to Kallish stating, "Nicole and I had a great interview with the examiner," both of which demonstrate that Kallish did not attend the USPTO interviews as he claimed to the Court. See Exhibits F-H.

More fundamentally, neither having an idea for a product nor participating in patent prosecution constitutes inventorship under settled patent law. As the Federal Circuit has explained, "conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed. Cir. 1994). Likewise, "[o]ne does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

Kallish's explanation to the Court cannot be reconciled with his sworn deposition testimony. If Kallish truly contributed to "all" patent claims, as he testified under oath, he should have been able to identify to the Court at least one claim he conceived and explain his inventive

6

contribution. Instead, he proffered to the Court explanations that, as a matter of patent law, do not constitute inventorship.

Defendants have repeatedly argued throughout this litigation that Plaintiff was in the best position to know whether Kallish was an inventor and therefore must have believed he was one. However, Plaintiff was given the same explanation Kallish later presented to the Court, along with inventor declarations and patent filings prepared and submitted by experienced patent counsel that appeared to confirm Kallish's inventorship claims. The significance of this evidence is not inventorship itself, but rather, it demonstrates Kallish's use of claimed inventorship rights, and Plaintiff's reliance upon those claims, to pressure Plaintiff into assigning patents that she otherwise solely owned. It is further probative of motive, intent, concealment, and the absence of mistake, and supports Plaintiff's contention that Kallish sought to obtain ownership and control of Plaintiff's patents and expertise through misrepresentation.

Accordingly, Plaintiff respectfully requests reconsideration of the Court's ruling excluding the following specific extrinsic evidence concerning inventorship and seeks permission under FRE 403 to introduce PX-58, PX-59 (USPTO interview minutes), and PX-80 (email directing patent counsel to remove Plaintiff as an inventor while leaving Kallish as the sole inventor). Plaintiff offers these exhibits not to litigate inventorship, but to demonstrate motive, deception, intent, plan, and Kallish's efforts to maintain his ownership rights in Plaintiff's intellectual property as part of a broader scheme to misappropriate Plaintiff's patents.

4.  Efforts to Remove Plaintiff as an Inventor (Exhibit I)

If permitted by the Court under FRE 403, Plaintiff seeks to present evidence that, pursuant to his motive to misappropriate her intellectual property, Kallish actually directed patent counsel to remove Plaintiff as an inventor altogether, and to instead identify Kallish as the sole inventor of

7

Plaintiff's patent. See Exhibit I, email to patent counsel. This evidence demonstrates a separate mechanism through which Kallish attempted to misappropriate Plaintiff's patents, and is proof of motive and intent under FRE 403.

When viewed in totality with Kallish's claims of inventorship, his sworn inventor declarations, his contradictory explanations under oath concerning inventorship (to the Court versus in his deposition), and his surreptitious acquisition of Plaintiff's patent from Everyone's Earth to himself alone on December 22, 2016, the evidence reveals a consistent pattern directed toward the same objective: misappropriating Plaintiff's patents without providing shares or any other compensation. Plaintiff therefore respectfully requests that the Court permit the introduction of the corresponding exhibits under FRE 403 because they are highly probative of whether the alleged breach of fiduciary duty was accomplished through fraud, deception, and self-dealing.

### III.   PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM SOUNDS IN FRAUD

New York courts do not determine the applicable statute of limitations by the label attached to a cause of action, but by the substantive nature of the misconduct alleged. "Where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations." *Schottenstein v. Lee*, LEXIS 23333, WL 515247 (S.D.N.Y. 2024); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009).

Under New York law, the applicable limitations period for a breach of fiduciary duty claim depends upon the substantive nature of the allegations. The New York Court of Appeals has explained that where a breach of fiduciary duty claim is "based on allegations of actual fraud," the six-year limitations period governs. *Kaufman v. Cohen*, 760 N.Y.S.2d 157, LEXIS 5918 (1st Dep't 2003) and "where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213 (8)." *IDT Corp. v.*

*Morgan Stanley Dean Witter & Co.*, supra at 139. The Second Department likewise applies the longer fraud limitations period where fiduciary misconduct is accomplished through fraudulent conduct, concealment, or intentional deception. See *Monaghan v. Ford Motor Co.*, 71 A.D.3d 848 (2d Dep't 2010).

The relevant inquiry is not whether the parties had contractual arrangements concerning shares, options, or compensation, but whether the fiduciary's misconduct was accomplished through deception, concealment, misrepresentation, self-dealing, or other fraudulent conduct. "Under New York law…an actionable tort may exist when the plaintiff asserts that the defendant breached a duty independent of the contract. The duty can be considered independent of the contract even if it arises out of the relationship that the contract created. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract. Therefore, in a case where the plaintiff sufficiently pleads a duty beyond the scope of a contract, he can also maintain other tort claims." *Balta v. Ayco Co., LP*, 626 F. Supp. 2d 347, LEXIS 42510 (W.D.N.Y. 2009).

The critical inquiry, therefore, is whether the fiduciary obtained benefits through deception and abuse of trust. Here, the newly discovered Assignment Agreement (Exhibit A) confirms that Plaintiff's breach of fiduciary duty claim sounds in fraud. Plaintiff alleges that Kallish repeatedly represented that she would be a founder and owner of the company that would hold and exploit her patent rights, induced her to assign her patent rights to that purported company, Everyone's Earth, while Kallish concealed the fact that he had transferred her patent directly to himself and she was actually receiving stock options in a shell company.

These facts closely parallel the fiduciary misconduct in *Hall v. Middleton*, LEXIS 8378 (Sup. Ct. N.Y. County 2022), where the court found that a corporate fiduciary improperly

9

diverted patent rights to himself after inducing others to believe that the patents belonged to the company in which they were investing. In *Hall*, as here, the defendant represented that the company owned valuable patent rights and induced investment based upon these representations, while instead causing patents belonging to the company "to be transferred to and owned by himself personally in breach of his fiduciary duty of loyalty to the Company." Id. The court emphasized that investors were "led to believe that they would be investing in a Company that would own these patents" (id) and that the patent applications had been filed on behalf of the company. The court not only found that the defendant had breached his fiduciary duty by diverting ownership of the patents to himself, but characterized the misconduct as intentional self-dealing and fraud, observing that the defendant's conduct reflected a willingness "to misrepresent the facts" and that his attempted scheme to steal the patents was "impelled by a fraudulent motive." Id.

Here, Plaintiff was repeatedly led to believe that she was receiving an ownership interest in the company that would own and exploit her inventions. Yet the newly discovered Assignment Agreement reveals that Kallish caused Plaintiff's patent to be transferred from Everyone's Earth to himself personally only weeks after obtaining her assignment. Thus, like the defendant in *Hall*, Kallish obtained the benefit of Plaintiff's patent through representations that Plaintiff owned an interest in the company holding and exploiting her patent, though he had diverted the patent to himself.

The Court in *Hall*, id, did not treat the misconduct as a mere dispute over ownership rights or contractual expectations. Rather, the court viewed the fiduciary's conduct as a deliberate scheme involving misrepresentations, self-dealing, diversion of assets, and concealment of the

10

true ownership of the patents. The court expressly found that the fiduciary's diversion of the patents was motivated by fraud and awarded $1 million in punitive damages on that basis.

Likewise, in *Loengard v. Santa Fe Industries, Inc.*, 70 N.Y.2d 262, 266-67 (1987), the Second Circuit held that where a fiduciary obtains a benefit through concealment and deceptive conduct, the claim is governed by principles applicable to fraud because the wrongdoing arises from abuse of a relationship of trust and confidence rather than from a mere contractual breach. Because fraud, concealment, and self-dealing were the means by which Plaintiff alleges that the breach was accomplished, Plaintiff's breach of fiduciary duty claim sounds in fraud and is governed by the six-year statute of limitations applicable to fraud-based fiduciary duty claims.

### IV.    PUNITIVE DAMAGES

The same principles that support application of the six-year fraud statute of limitations also support Plaintiff's request for punitive damages. Plaintiff alleges conduct by Defendants that demonstrate "a wanton or reckless disregard of plaintiff's rights." *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (1988). "[N]or can we accept defendants' argument that the punitive damages award must be overturned because there was no harm aimed at the public generally" as "punitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied," as here. *Id*. Contrary to Defendants' prior arguments, a plaintiff asserting a breach of fiduciary duty sounding in fraud need not establish a separate fraud cause of action, nor must the plaintiff demonstrate that the misconduct was directed at the public where the fiduciary relationship itself was the vehicle through which the fraud was accomplished. Id at 772.

The Court's recent decision in *Hall v. Middleton, supra*, is particularly instructive. There, as here, a fiduciary induced others to believe valuable patent rights belonged to the company while secretly diverting them to himself. In rejecting the argument that punitive damages

11

required misconduct directed at the public, the court held that, "[h]aving breached his fiduciary duty of loyalty to the Company, [the defendant] may be held liable for punitive damages regardless of whether his conduct was aimed at the public generally." Id. The court found punitive damages warranted because, as here, the defendant's diversion of company assets was "intentional and deliberate," constituted "aggravating and outrageous circumstances," and because his "attempted scheme to effectively steal the patents for himself was impelled by a fraudulent motive." Id.

Here, Plaintiff's evidence will show that Kallish repeatedly represented that Plaintiff was a founder and owner of the company that would hold and exploit her patents, induced her to assign her patents and devote years of labor to the enterprise, refused to provide the ownership interest repeatedly promised, and claimed (only after litigation began) that the Option Agreements somehow satisfied Defendants' obligations. A jury could reasonably conclude that these actions were intentional, deliberate, and motivated by a desire to obtain ownership and control of Plaintiff's patents through deception and abuse of a fiduciary relationship such that the claim sounds in fraud.

The court in *Hall* further explained that punitive damages serve to deter "morally culpable conduct" and constitute "a punishment of the defendant for the wrong in the particular case, and for the protection of the public against similar acts, to deter the defendant from a repetition of the wrongful act, and to serve as a warning to others." Id. Significantly, after finding that the fiduciary's patent-diversion scheme was "impelled by a fraudulent motive," the court concluded in Hall that "[a]nything other than a sizeable penalty would be insufficient" and awarded the plaintiff $1 million in punitive damages. Id. The same rationale applies here. If the jury credits Plaintiff's evidence, it will establish a deliberate scheme involving deception,

12

concealment, self-dealing, and the misappropriation of valuable intellectual property by a fiduciary. Under such circumstances, punitive damages are available under New York law to punish the misconduct, deter similar conduct by fiduciaries, and vindicate the fundamental duties of loyalty and honesty owed by those who occupy positions of trust.

**V.    CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) determine that Plaintiff's breach of fiduciary duty claim sounds in fraud and is therefore governed by the six-year statute of limitations applicable to fraud-based fiduciary duty claims; (2) permit Plaintiff to seek punitive damages based upon the evidence of fraud, concealment, and self-dealing; and (3) permit the introduction of Plaintiff's proposed exhibits discussed herein under FRE 403 as evidence of motive, intent, plan, concealment, and absence of mistake.

Dated: June 15, 2026

Respectfully submitted,

/s/ Ian J. Brandt
Lasser Law Group PLLC
633 Third Ave., Suite 1301
New York, NY 10017
914-529-9111
ibrandt@lasserlg.com
212-292-3075
*Attorneys for Plaintiff*

13
